**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

STEPHEN D.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:21-cv-00746

Cole, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Stephen D. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. The undersigned concludes that the Commissioner's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the record.

**I. Summary of Administrative Record**

On March 7, 2018, Plaintiff filed a new application for a Period of Disability and Disability Insurance Benefits ("DIB"), alleging disability beginning March 1, 2018.[2] (Tr. 45, 235). Plaintiff alleges disability due to a combination of degenerative disc disease of the lumbar spine, osteoarthritis of the left knee, hypertension, major depression,

---

[1] Due to significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The record reflects that Plaintiff submitted prior electronic filings in 2006, which were denied at the initial and reconsideration levels. (Tr. 115).

1

adjustment disorder with anxiety, and a stroke in February 2018 that left him with some mobility issues and exacerbated his depression and adjustment disorder. (Doc. 7 at 3).

Plaintiff's initial claim was denied and he timely requested an administrative hearing before an Administrative Law Judge ("ALJ"). On February 12, 2020, Plaintiff appeared by video with counsel and gave testimony before ALJ Christopher J. Mattia; a vocational expert ("VE") also testified. (Tr. 69-96). Plaintiff had been homeless for the past year and a half but was staying with a friend at the time of the hearing. (Tr. 81, 87). He previously had been employed as a metal tester, which the VE classified as semi-skilled work performed at the medium level. (Tr. 90).

On March 31, 2020, the ALJ issued an adverse written decision. (Tr. 45-60). The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Through counsel, Plaintiff then filed this judicial appeal.[3]

The ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the left knee; hypertension; status post cerebrovascular accident; major depression; and adjustment disorder with anxiety. (Tr. 47). Considering Plaintiff's impairments individually and in combination, the ALJ determined that none met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 48).

The ALJ next determined that Plaintiff's RFC would allow him to perform light work subject to the following limitations:

> lift and carry 10 pounds frequently and 20 pounds occasionally; stand or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday;

---

[3]The record contains an unverified (and, to paraphrase Mark Twain, "greatly exaggerated") report that Plaintiff passed away while his request for further review was pending (Tr. 24). An undated letter by Plaintiff states that report was in error. (Tr. 343). Consistent with Plaintiff's statement, counsel initiated this case in Plaintiff's own name.

2

> push or pull within the aforementioned weight restrictions; occasionally operate foot controls with the left lower extremity; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; occasionally reach overhead with the left upper extremity; frequently handle and finger with the left upper extremity; never have exposure to unprotected heights or moving mechanical parts; understand, carry out, and remember simple instructions in work that can be learned in 1 month or less; make simple work-related decisions; occasionally interact with supervisors, co-workers, and the public; occasionally tolerate changes in a routine work setting; and perform work in which the pace is not set by an external source over which he has no control such as assembly line work.

(Tr. 50-51).

Based upon the RFC and testimony from the VE, the ALJ agreed that Plaintiff could not perform his prior work, but determined he still could perform other jobs that exist in significant numbers in the national economy, including the representative occupations of inspector, hand packager, and assembler. (*Id.* at 91). Therefore, the ALJ determined that Plaintiff was not under a disability. (*Id.*)

In his Statement of Errors, Plaintiff seeks reversal on grounds that the ALJ failed to include a mental RFC limitation to "superficial contact" in the hypothetical posed to the VE. On August 9, 2022, Plaintiff filed an additional "Motion to Remand" in support of his Statement of Errors. For the reasons that follow, the Commissioner's decision should be affirmed and Plaintiff's motion for remand should be denied.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial

3

gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of

4

Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Limited Challenge to his Mental RFC

Plaintiff does not challenge the ALJ's assessment of his physical limitations, nor does Plaintiff challenge the ALJ's assessment of most of his mental limitations.  Instead, Plaintiff's sole claim focuses on the ALJ's failure to include a more restricted limitation than to "occasional" interactions with others.  Defendant persuasively argues that Plaintiff's claim fails for two reasons: (1) the ALJ's analysis is sufficiently articulated and substantially supported; and (2) any possible error is harmless because the jobs that the ALJ determined that Plaintiff can perform require only minimal social interactions.

#### 1. The ALJ's Articulated Analysis is Substantially Supported

Three agency psychologists offered opinion evidence concerning Plaintiff's mental limitations.  First, on July 10, 2018, examining psychologist James Rosenthal, Psy. D. authored a report based upon his clinical examination of Plaintiff.  Dr. Rosenthal's report offers opinions that primarily relate to the "Paragraph B" criteria used at Step 3 of the

5

sequential process. Two non-examining agency psychologists subsequently reviewed Dr. Rosenthal's report and opinions and offered additional RFC opinions.

In one of the few areas of specific mental limitations offered by Dr. Rosenthal, he opined that Plaintiff "likely" would have concentration problems with "fast-paced or multistep work assignments" but would not have other limitations in attention and concentration, persistence and pace. (Tr. 875). That opinion was well-supported by statements in the body of Dr. Rosenthal's report, in which he observed that Plaintiff walked slowly, exhibited low average intelligence, and consistently reported difficulties in focus and concentration. (Tr. 871, 873, 874, 875).

In contrast to the statements that supported limitations in concentration and pace, Dr. Rosenthal's report did not suggest *any* limitations in social interactions in the workplace. Instead, Dr. Rosenthal wrote that Plaintiff reported he had maintained friends at school and had "<u>no social problems at work</u>" over many years of employment. (Tr. 873, emphasis added). Plaintiff also "denied …social problems at school." (Tr. 872). Although Plaintiff reported that he was fired from one job, his termination was based upon a mistake rather than interpersonal conflict. Plaintiff also reported that he "related well with most bosses and co-workers on past jobs." (Tr. 875). Dr. Rosenthal noted that Plaintiff was "cooperative and pleasant during the exam." (Tr. 876). The only social limitation of any kind was Plaintiff's report that he had not recently socialized with "a lot of people… due to lack of motivation and interest," specifically, embarrassment about his post-stroke left-side weakness. (Tr. 875-876). Nevertheless, he reported that he frequently interacts with his mother and daughter and socializes with his girlfriend daily. (Tr. 874). He also runs errands on some days. (*Id.*)

6

Although the body of Dr. Rosenthal's report suggests no "limitations in responding appropriately to supervision and to co-workers," the summary under that heading is more ambiguous due to typographical errors.  Specifically, the first sentence of the summary appears to be missing a meaningful word, whereas the last sentence contains a misspelling.

> The claimant reported [?] pattern of conflict with others in work or social settings. He said he related well with most bosses and co-workers on past jobs.  He said he doesn't socialize with a lot of people now due to lack of motivation and interest.  He said he is embarrassed by his life-side [sic] weakness and limping.  He was cooperative and pleasant during the exam.

(Tr. 875-876).

The improper syntax of the first sentence combined with the juxtaposition of the second sentence alerts the reader to a missing word in the first.[4]  Based upon the content of the entire report and the repetitive nature and context of the summary, the undersigned concludes that the omitted word is "no."  Thus, the first sentence should read:  "The claimant reported [no] pattern of conflict with others in work or social settings."  The only other possible "fill in the blank" word would be the article "a."  However, the insertion of that word results in the implausible reading:  "The claimant reported [a] pattern of conflict with others in work or social settings."  In addition to expressing a novel thought inconsistent with summation, such a conclusion contradicts the second sentence of the summary and numerous statements earlier in the report that Plaintiff reported "no social problems at work," no social problems at school, and none historically in his personal life apart from recent self-limiting behaviors.

---

[4]The second error occurs in the last sentence where the author mistyped "life-side" instead of "left-side" weakness.

7

Dr. Rosenthal's report was the only medical opinion evidence considered by the two non-examining psychologists on initial review and on reconsideration. Based upon his report, they opined that Plaintiff "retains the ability to complete job tasks in a relatively static work setting where change is infrequent and can be shown or explained to him." (*See*, *e.g.*, Tr. 111, 129). They further opined that he is able to "understand and remember simple instructions" due to low intelligence, and is moderately limited in his ability to carry out detailed instructions, or to maintain attention and concentration for extended periods. (Tr. 127) They stated he "can carry out and complete simple 1-3 step job tasks that do not have strict production standards or requirements to perform at a fast pace." (Tr. 128). Last but not least, they concluded that he can "interact superficially." (*Id.*)

The ALJ found the non-examining consulting opinions "persuasive in part" after determining they were "supported by explanation and generally consistent with the objective clinical findings." (Tr. 57). The ALJ expressly incorporated most of their RFC opinions. In formulating the hypothetical RFC for the VE, however, the ALJ expressly rejected the consultants' use of the phrases "low stress [jobs]" and that "[can] interact superficially" in part because he found those phrases to be "vocationally vague." (Tr. 57). The ALJ went on to employ other phrases to better define "low stress" jobs,[5] but ultimately determined that Plaintiff was capable of "occasional" and not merely "superficial" social interactions. Plaintiff argues that the ALJ's failure to incorporate a limitation to

---

[5]Plaintiff does not fault the ALJ's translation of "low stress" into more relevant terms, such as "work that can be learned in 1 month or less." "that requires only "simple work-related decisions" with only occasional changes in a "routine" setting where "the pace is not set by an external source over which he has no control such as assembly line work." (Tr. 51).

8

"superficial" interactions constitutes reversible error, and that the ALJ's explanation of why he limited Plaintiff to "occasional" interactions is inadequate.

The undersigned finds no error. An ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Com'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. (2009) (citing C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).

Plaintiff first attacks the ALJ's rejection of the "interact superficially" phrase as "vocationally vague." *See e.g., Hummel v. Com'r of Soc. Sec.*, 2020 WL 13572215, at *4 (S.D. Ohio March 13, 2020) (holding ALJ's rejection of "superficial" contact as not "vocationally relevant" was "inadequate."). It is true that many courts have reasoned that the adjective "superficial" is commonly understood to refer to the quality of social interactions, whereas the term "occasional" refers to the quantity of social interactions. *Id*. Thus, "courts routinely recognize that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions - including a limitation to 'superficial' interaction." *Hutton v. Com'r of Soc. Sec.*, 2020 WL 3866855, at *4 (S.D. Ohio July 9, 2020) (collecting cases).

However, it is noteworthy that all of the case law on this issue is unpublished. No published and controlling case law, or social security regulation, or social securing ruling, defines "superficial interactions" in vocationally precise and relevant terms. Given that lack of regulatory authority, several courts have explained why a phrase that this Court might believe to be easily understood by a lay person still might be described as "vocationally vague" by an ALJ who is required to formulate a hypothetical in legally precise terms for a vocational expert.

> [A] VE's testimony must be based on her own vocational expertise and/or the information in the Dictionary of Occupational Titles ("DOT") and

9

> Selected Characteristics of Occupations ("SCO"), and <u>cannot</u> be based on conclusions outside of her expertise, assumptions that are not clearly described on the record, or assumptions or definitions that are inconsistent with the SSA's policies or definitions. For these reasons, it may fall to the ALJ to "convert[ ] and incorporate[ ]" the limitations set forth in a medical opinion "into vocationally relevant terms" – i.e., terms that are relevant and meaningful in the DOT / SCO and/or the VE's own vocational experience – before including those limitations in a hypothetical posed to a VE.

*Stoodt v. Com'r of Soc, Sec.*, 2022 WL 721455, at *16 (N.D. Ohio, Jan. 13, 2022) (internal citation omitted), adopted 2022 WL 716105 (March 10, 2022). Again, there is no specific definition for the term "superficial" human interaction in the DOT or SCO. *Id.*; s*ee also Beulah v. Com'r of Soc. Sec.*, 2022 WL 1609236, at *31 (N.D. Ohio March 25, 2022) (holding that the term "superficial" does not have a defined meaning for purposes of vocational testimony).

By contrast, specific regulatory definitions state that the ALJ's use of the word "occasional" in his hypothetical means an activity or condition existing up to 1/3 of the time. *Stoodt,* 2022 WL 721455, at *16,   Still other vocational definitions define various types of social interactions in the workplace.

> Other defined terms in the DOT and SCO that relate to interactions include mentoring, negotiating, instructing, supervising, diverting, persuading, speaking-signaling, serving, and taking instructions-helping. SCODICOT Appendix E; *see also Reese v. Saul,* No. 3:18-CV-442-HBG, 2020 WL 1312703, at *14 (E.D. Tenn. Mar. 19, 2020) (explaining that "the 'DOT ranks the degree of interaction with people in each job type' on a scale from 0 (Mentoring) to 8 (Taking Instructions-Helping), going from the highest to the lowest level of functioning") (quoting *Kane v. Saul*, No. 3:18-CV-746 (HEH), 2019 WL 7562760, at *15 (E.D. Va. Aug. 20, 2019), *report and recommendation adopted by*, 2020 WL 130134 (E.D. Va. Jan. 10, 2020).)

*Id.*

Dr. Rosenthal's consultative examination report, on which the non-examining consultants relied, unambiguously states that Plaintiff reported  "no social problems at work." (Tr. 873). Notwithstanding many statements in Dr. Rosenthal's report relating to

10

Plaintiff's lack of social conflicts, it is possible that the non-examining consultants misread the ambiguous first sentence in the report to suggest that Plaintiff had reported "**a** pattern of conflict with others" rather than "**no** pattern of conflict with others." Regardless, Plaintiff cites to no other records to support any social interaction limitations at work, and the undersigned has located none in her review.

In his reply memorandum, Plaintiff argues that the ALJ "omitted the ['superficial'] opinion simply because it was undefined in vocational terms." (Doc. 12 at 2). Contrary to that assertion, the ALJ actually rejected the limitation to "superficial" interactions primarily because substantial evidence supported a greater level of "occasional" social interactions. Thus, in addition to the fact that "superficial" is not precisely defined under the DOT and SCO, the ALJ expressly stated that the medical record supports "occasional interaction" and does not establish "additional restrictions." (Tr. 56). Additionally, the ALJ explained that "a preponderance of the evidence **including the consultative psychological examination report** supports occasional interaction with others and occasional changes in work setting…." (Tr. 57, emphasis added). As discussed, Dr. Rosenthal's consultative examination report clearly states that Plaintiff reported "**no** social problems at work," (Tr. 873), and the record as a whole strongly supports the ALJ's conclusion that Plaintiff could engage in at least "occasional" social interactions.[6]

In addition to the ALJ's explicit reference to Dr. Rosenthal's report, the ALJ included the following analysis:

---

[6]Throughout his opinion, the ALJ reviewed Plaintiff's subjective reports, daily activities, and medical opinion evidence. The ALJ noted that there was no information concerning mental health treatment (for social interactions or otherwise) apart from a 2020 document limited to diagnostic information. (Tr. 55, citing Tr. 1084). Conversely, Plaintiff's treatment providers consistently noted normal mental status examinations, normal judgment, behavior, mood and affect. (Tr. 54-55).

11

> In interacting with others, the claimant has a moderate limitation. The claimant alleged that he has difficulty engaging in social activities and spending time in crowds due to anxiety and panic attacks (Testimony; 7E). In addition, the claimant reported that he was fired from his job at AK Steel in July 2017 for making a mistake (7F/1). However, according to his statements, the claimant is also able to get along with others including authority figures, and his girlfriend visited daily in the afternoon, he lived with and talked to his mother/daughter daily, shopped with the assistance of friends, and ran errands occasionally (Testimony; 7E; 7F). Moreover, the claimant testified that he was homeless and living at friends' homes (Testimony). Therefore, I find that the evidence established no more than moderate limitation in interacting with others.

(Tr. 49).

Unsurprisingly, Plaintiff points to no contrary evidence in the record that would support any greater limitation to "superficial" interactions.[7] Based upon the ALJ's articulated analysis and a review of the record, the undersigned concludes that the ALJ built a logical bridge to explain the basis for the RFC as determined. *Accord Cox v. Com'r of Soc. Sec.*, 2022 WL 4102741, at *2 (N.D. Ohio, Sept. 8, 2022) (rejecting plaintiff's similar claim that ALJ failed to sufficiently explain basis for finding "occasional" rather than "superficial" interactions, where "[t]he ALJ expressly indicated that he found the opinions of the state agency psychologists only somewhat persuasive, and specifically pointed to medical evidence in the record supporting this determination."). In sum, the Commissioner's decision is substantially supported.

### 2. Plaintiff's Motion to Remand/Supplemental Authority

In a separate Motion to Remand filed after full briefing on his Statement of Errors was completed, Plaintiff argues that a recent Order of the Appeals Council in an unrelated case provides additional authority in support of his position. In the referenced case, the

---

[7]Even if such evidence existed, it would be irrelevant since this Court must affirm so long as substantial evidence also exists to support the ALJ's decision.

12

parties jointly agreed to a Stipulated Order of Remand after the plaintiff filed suit in the Northern District of Ohio. *See Paul B. v. Commissioner*, Case No. 3:21-cv-02351-JRK.[8] In accordance with the parties' stipulated agreement and the court's order of remand, the Appeals Council entered an order instructing the ALJ to better articulate why the ALJ had rejected the agency psychologists' limitation to "superficial interaction." The Appeals Council's order states that the phrase "superficial interaction" is a term "that is readily defined, understood and applicable to a work setting, as it speaks to the depth, kind and quality of social interactions, and indicates that the claimant could not have sustained more than shallow or cursory interactions with others." (Doc. 14, citing Doc. 14-1). Plaintiff now asserts that the Appeals Council's Order constitutes a new and binding "Agency" definition of the phrase "superficial interaction." (Doc. 14).

Plaintiff is wrong for two reasons. First, even if the Appeals Council Order held any persuasive value (it does not), the alleged new definition would have no relevance here. As discussed, the ALJ specifically rejected a limitation to superficial interaction and determined that Plaintiff was capable of occasional social interactions in the workplace. The ALJ's analysis in that regard is well supported.

Second, an Appeals Council Order is limited in scope to the case specified and does not constitute broad-sweeping Agency action that is binding on the Agency at large or on this Court. The Social Security Agency could define "superficial interactions," if it chose to do so, in any number of ways. The Social Security Act, as amended, along with Regulations, Social Security Rulings (SSRs), Acquiescence Rulings (ARs), the Program Operations Manual System (POMS), and the Hearings, Appeals, and Litigation Law

---

[8] Plaintiff Paul B. was represented by the same counsel who represents Plaintiff Stephen D. in this case.

Manual (HALLEX) provide the basic guides for adjudication and review of Social Security claims. A single order by the Appeals Council that implements a stipulated judicial order of remand in an unrelated case does not.

### 3. Any Possible Error is Harmless

Even if a reviewing Court were to disagree with the foregoing analysis, the undersigned also is persuaded by the Defendant's alternative argument that Plaintiff cannot show that the ALJ's alleged error is material to the outcome of this case. *See Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) (noting "no principle of administration law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Defendant points out that the ALJ determined that Plaintiff could perform work as an inspector and in other positions for which the DOT rates the level of social interaction as a "People level 8", meaning the lowest level of social interaction. That level of interaction is described as "not significant." *See e.g.*, Inspector, DOT#559.687-074, 1991 WL 683797. Numerous other courts have found that occupations with a social interaction level of "8" can be performed even by individuals with a limitation to "superficial" interactions.[9] *See, e.g., Simpson v. Colvin*, 2014 WL 5313724, at *21 (E.D. Mo. Oct. 16, 2014); *Cissner v. Berryhill*, 2017 WL 3821461, at *10 (S.D. Ohio Sept. 1, 2017).(finding no error where restriction to superficial interaction was "entirely consistent" with the jobs that the ALJ relied upon).

---

[9]Plaintiff argues in his reply memorandum that there is no "bright line rule … that all cases with a People rating of 8 be found consistent with superficial work," and that such a determination must be made "on a case-by-case basis." (Doc. 12 at 6). The undersigned finds no need to discuss this issue further, as the case law cited by the Defendant (and absence of any contrary authority) is persuasive.

14

### III. Conclusion and Recommendation

Because it is supported by substantial evidence, **IT IS RECOMMENDED THAT** the decision of the Commissioner be **AFFIRMED** and that this case be **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| STEPHEN D., | Case No. 1:21-cv-00746 |
| Plaintiff, | Cole, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).