**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

STEPHEN D.,[1]                                    Case No. 1:21-cv-00746

                Plaintiff,                              Cole, J.
                                                       Bowman, M.J.
        v.


COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

        Plaintiff Stephen D. filed this Social Security appeal to challenge the Defendant's

finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel,

Plaintiff presents a single claim of error for this Court's review. On December 22, 2022,

the undersigned filed a Report and Recommendation ("R&R") that recommended that the

Commissioner's decision be affirmed. (Doc. 17). But on June 27, 2023, the presiding

district judge returned the matter to the undersigned under Rule 72(b)(3) with instructions

to issue this Supplemental R&R. (Doc. 19). On reconsideration of additional case law, the

undersigned reaffirms her conclusion that the Commissioner's finding of non-disability

should be AFFIRMED.

        **I. Summary of Administrative Record**

        On March 7, 2018, Plaintiff filed a new application for a Period of Disability and

Disability Insurance Benefits ("DIB"), alleging disability beginning March 1, 2018.[2] (Tr. 45,

---

[1]Because of significant privacy concerns in social security cases, the Court refers to claimants only by their
first names and last initials. *See* General Order 22-01.
[2]Plaintiff's prior electronic filings were denied at the initial and reconsideration levels. (Tr. 115).

1

235). Plaintiff alleges disability based on a combination of degenerative disc disease of the lumbar spine, osteoarthritis of the left knee, hypertension, major depression, adjustment disorder with anxiety, and a stroke in February 2018 that left him with some mobility issues and exacerbated his depression and adjustment disorder. (Doc. 7 at 3).

Plaintiff's initial claim was denied and he timely requested an administrative hearing before an Administrative Law Judge ("ALJ"). On February 12, 2020, Plaintiff appeared by video with counsel and gave testimony before ALJ Christopher J. Mattia; a vocational expert ("VE") also testified. (Tr. 69-96). Plaintiff had been homeless for the past year and a half but was staying with a friend at the time of the hearing. (Tr. 81, 87). He had been employed as a metal tester, which the VE classified as semi-skilled work performed at the medium level. (Tr. 90). On March 31, 2020, the ALJ issued an adverse written decision. (Tr. 45-60). The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Through counsel, Plaintiff then filed this judicial appeal.[3]

The ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the left knee; hypertension; status post cerebrovascular accident; major depression; and adjustment disorder with anxiety. (Tr. 47). In addition, the ALJ found the following "non-severe" impairments do not more than minimally affect Plaintiff's ability to perform basic work functions: acute right fifth metacarpal fracture, hypercholesterolemia/hyperlipidemia, history of myocardial infarctions, acute gastritis, esophagitis, alcohol abuse, stable

---

[3]The record contains an unverified (and, to paraphrase Mark Twain, "greatly exaggerated") report that Plaintiff passed away while his request for review was pending (Tr. 24). An undated letter by Plaintiff confirms that report was in error. (Tr. 343). Therefore, counsel filed this case in Plaintiff's own name.

2

moderate-size calcification in the pancreas, no pancreatic mass, small hiatal hernia, stable mild colonic diverticulosis, mild hypertrophy of the prostate gland, stable left adrenal nodule, stable mild hypertrophy of the right adrenal gland, stable-appearing simple cysts of both kidneys, and hepatic cyst. (Tr. 48). Considering Plaintiff's impairments individually and in combination, the ALJ determined that none met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

The ALJ next determined that Plaintiff's RFC would allow him to perform light work subject to the limitations below:

> lift and carry 10 pounds frequently and 20 pounds occasionally; stand or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; push or pull within the aforementioned weight restrictions; occasionally operate foot controls with the left lower extremity; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; occasionally reach overhead with the left upper extremity; frequently handle and finger with the left upper extremity; never have exposure to unprotected heights or moving mechanical parts; understand, carry out, and remember simple instructions in work that can be learned in 1 month or less; make simple work-related decisions; occasionally interact with supervisors, co-workers, and the public; occasionally tolerate changes in a routine work setting; and perform work in which the pace is not set by an external source over which he has no control such as assembly line work.

(Tr. 50-51).

Based on the RFC and testimony from the VE, the ALJ agreed that Plaintiff could not perform his prior work, but determined he still could perform other jobs that exist in significant numbers in the national economy, including the representative occupations of inspector, hand packager, and assembler. (*Id.* at 91). Therefore, the ALJ determined that Plaintiff was not under a disability. (*Id.*)

In his Statement of Errors, Plaintiff seeks reversal on grounds that the ALJ failed to include a mental RFC limitation to "superficial contact" in the hypothetical posed to the

3

VE. On August 9, 2022, Plaintiff filed an additional Motion to Remand in support of his Statement of Errors. On December 22, 2022, the undersigned filed an R&R recommending that the motion to remand be denied and that the Commissioner's decision be affirmed. However, the presiding district judge returned the matter to the undersigned with instructions to issue this Supplemental R&R. U.S. District Judge Cole directed the undersigned to review and discuss recent case law, not cited by the parties, that suggests a growing consensus that an ALJ may not properly disregard medical opinions that limit a claimant to "superficial" social interactions because "superficial" is vocationally vague. (Doc. 19 at 2-3, PageID 1208-09).

Considering the referenced case law, Judge Cole invited the undersigned to reassess:

> (1) whether the ALJ committed reversible error when disregarding the experts' "superficial" interaction recommendation on the grounds that it is vocationally vague, and (2) whether in fact the ALJ also rejected the "superficial" interaction limitation on evidentiary grounds as the R&R suggests, and if so, where in the record the ALJ articulated that finding, and (3) whether any error the ALJ may have committed in rejecting the "superficial" interaction limitation can be subject to harmless error analysis in this Court.

(*Id*. at 3, PageID 1209). Having completed that reassessment and addressing each issue, the undersigned reaffirms but significantly expands upon her original analysis.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial

4

gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of

Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B.  Plaintiff's Limited Challenge to his Mental RFC**

Plaintiff does not challenge the ALJ's physical RFC assessment, nor does Plaintiff challenge most of the ALJ's mental RFC assessment. The ALJ's mental RFC findings limited Plaintiff to being  able to "understand, carry out, and remember simple instructions in work that can be learned in 1 month or less; make simple work-related decisions; occasionally interact with supervisors, co-workers, and the public; occasionally tolerate changes in a routine work setting; and perform work in which the pace is not set by an external source over which he has no control such as assembly line work." (Tr. 51). Plaintiff's sole claim criticizes the ALJ's decision not to use the phrase "superficial interaction" in the mental RFC as well as the ALJ's explanation for why he did not use that phrase. (Doc. 7 at 7, PageID 1126). Before discussing recent case law regarding the use of "superficial" in an RFC finding and the three questions posed by Judge Cole, the undersigned reviews the medical opinions that underlie Plaintiff's claim.

6

## 1. Relevant Medical Opinion Evidence

Three agency psychologists offered opinion evidence about Plaintiff's mental limitations. First, on July 10, 2018, examining psychologist James Rosenthal, Psy. D. authored a report based on his clinical examination of Plaintiff. Dr. Rosenthal's report includes opinions that primarily relate to the "Paragraph B" criteria used at Step 3 of the sequential process. For example, Dr. Rosenthal opined that Plaintiff "likely" would have concentration problems with "fast-paced or multistep work assignments" but would not have other limitations in attention and concentration, persistence and pace. (Tr. 875). That opinion was well-supported by statements in the body of Dr. Rosenthal's report, in which he observed that Plaintiff walked slowly, exhibited low average intelligence, and consistently reported difficulties in focus and concentration. (Tr. 871, 873, 874, 875).

Unlike the supported limitations in concentration and pace, Dr. Rosenthal's report did not suggest *any* basis for limitations in the functional area of interacting with others in the workplace.[4] Dr. Rosenthal wrote that Plaintiff reported he had maintained friends at school and had "no social problems at work" over many years of employment. (Tr. 873, emphasis added). Plaintiff also "denied …social problems at school." (Tr. 872). Although Plaintiff reported that he was fired from one job, his termination was based on a mistake rather than interpersonal conflict. Plaintiff also reported that he "related well with most bosses and co-workers on past jobs." (Tr. 875). Plaintiff was "cooperative and pleasant during the exam," but reported that he had not recently socialized with "a lot of people…

---

[4]Paragraph B of the mental health listings describes four broad areas of mental functioning a person uses in a work setting, including the domain of "interact[ing] with others." The phrase "social interaction limitations" is used on some standard assessment forms, but the undersigned uses the regulatory phrase "interact with others" or "interactions" in an effort to avoid improperly conflating the often distinct types of interpersonal interactions required to perform basic work activities (discussed below) with those used in social settings.

due to lack of motivation and interest," specifically, embarrassment about his post-stroke left-side weakness. (Tr. 875-876). Nevertheless, he reported continued frequent interactions with his mother and daughter and socializing with his girlfriend on a daily basis. (Tr. 874). He also runs errands on some days. (*Id.*)

Despite the suggestion of no "limitations in responding appropriately to supervision and to co-workers," Dr. Rosenthal's summary under a heading of that title is made ambiguous based on typographical errors. Specifically, the first sentence of the summary appears to omit a meaningful word, while the last sentence contains a misspelling:

> The claimant reported [?] pattern of conflict with others in work or social settings. He said he related well with most bosses and co-workers on past jobs. He said he doesn't socialize with a lot of people now due to lack of motivation and interest. He said he is embarrassed by his life-side [sic] weakness and limping. He was cooperative and pleasant during the exam.

(Tr. 875-876).

The improper syntax of the first sentence combined with the juxtaposition of the second sentence alerts the reader to the missing word.[5] Based on the content of the entire report and the repetitive nature and context of the summary, the undersigned concludes that the omitted word is "no." Thus, the first sentence should read: "The claimant reported [no] pattern of conflict with others in work or social settings." The only other possible "fill in the blank" word would be the article "a." However, the insertion of that word results in the implausible reading: "The claimant reported [a] pattern of conflict with others in work or social settings." On top of expressing a novel thought inconsistent with summation, such a conclusion contradicts the second sentence of the summary and numerous statements earlier in the report that Plaintiff reported "no social problems at work," no

---

[5]The second error occurs in the last sentence where the author mistyped "life-side" instead of "left-side" weakness.

social problems at school, and none in his personal life apart from recent self-limiting social behaviors.

Dr. Rosenthal's report was considered by two non-examining agency psychologists who offered identical RFC opinions for consideration at Steps 4 and 5 of the sequential analysis, using a standard Mental RFC Assessment Form commonly known as the Psychiatric Review Technique Form ("PRTF"). Based on Dr. Rosenthal's Consultative Examination ("CE") report, they agreed Plaintiff has only "moderate" limitations in his overall ability to interact with others. (Tr. 107, 122). In response to more detailed queries, they rated five specific types of interaction under that category, finding "moderate" limitations in Plaintiff's ability to interact appropriately with the general public, in his ability to accept instructions and respond appropriately to criticism from supervisors, and in his ability to get along with coworkers or peers without distracting them. (Tr. 110, 128). By contrast, they rated Plaintiff as "not significantly limited" in his ability to ask simple questions or request assistance, and in his ability to adhere to basic standards of neatness and cleanliness. (Tr. 110, 128). When asked to summarize "social interaction capacities and/or limitations," they opined he "[c]an interact superficially." (*Id*.)[6]

### 2. Whether the ALJ Erred by Finding "Interact[ing] Superficially" to be Vocationally Vague

The ALJ expressly incorporated most psychological opinions after finding them to be "persuasive in part." (Tr. 57). But in formulating the hypothetical RFC used by the VE, the ALJ expressly *rejected* the phrases "low stress [jobs]" and "interact superficially" as

---

[6]In other domains, they opined that Plaintiff is able to "understand and remember simple instructions," can "carry out and complete simple 1-3 step job tasks that do not have strict production standards or requirements to perform at a fast pace," and "retains the ability to complete job tasks in a relatively static work setting where change is infrequent and can be shown or explained to him," (Tr. 110-111, 127-129).

"vocationally vague." (*Id.*) Plaintiff attacks the ALJ's characterization of the phrase "interact superficially" as "vocationally vague" as reversible error, arguing that it is inconsistent with the ALJ's RFC finding that Plaintiff can "occasionally interact with supervisors, co-workers, and the public."

Physicians and other medical sources frequently offer opinions on a claimant's job-related functional limitations; however, at the administrative hearing level it is the ALJ alone who has the responsibility to define the RFC in vocational terms. *See* 20 C.F.R. §416.946(c). Not infrequently, an ALJ will describe a particular medical opinion as vocationally vague or imprecise, and will further define a term or phrase in more vocationally relevant terms when articulating the RFC at Steps 4 and 5, or for purposes of soliciting testimony from a vocational expert. Having reviewed hundreds of ALJ opinions, the undersigned has understood such verbiage to be a term of art. In other words, the undersigned's view has been that the ALJ is not proclaiming that the word "superficial" has no readily understood meaning in the world at large, but that the adjective can be vague and require additional translation or definition in the highly regulated vocational parlance required for an RFC finding. That view, however, is no longer shared by a majority of the magistrate judges in this district.[7] Instead, most magistrate judges in the Southern District of Ohio recently have concluded in series of unpublished cases that - with rare exceptions - a judicially-crafted definition of "superficial" interactions in the workplace is vocationally definitive under the Social Security Act.

---

[7]Consistent with the practice of most federal district courts, all social security appeals filed in the Southern District of Ohio are automatically referred to magistrate judges. If the parties consent under 28 U.S.C. § 636(c), final disposition is before the magistrate judge and appeal is to the U.S. Court of Appeals for the Sixth Circuit. If the parties do not fully consent, then the magistrate judge prepares a Report and Recommendation for review by the presiding district judge under 28 U.S.C. § 636(b).

Significantly, all relevant case law defining "superficial" in vocational terms is unpublished. While most of that case law exists at the district court level, there is one Sixth Circuit case in which a plaintiff challenged an ALJ's interpretation of a medical opinion offering "superficial" interactions as equivalent to a vocational limitation of "occasional" interactions. In *Reeves v. Comm'r of Soc. Sec.*, 618 Fed. Appx. 267, 275 (6th Cir. 2015), two agency psychologists opined that the plaintiff was moderately limited in his ability to interact appropriately with the public and is "able to relate to a few familiar others on a superficial basis." *Id.* The district court record reflects that the ALJ assigned their opinions the most weight ("great weight"), but then translated the opinions that plaintiff could "relate to a few…on a superficial basis" into an RFC limitation to "only occasional interaction with the public." *Reeves v. Colvin*, No. 3:13CV1425, 2014 WL 4675321, at *4, 8 (N.D. Ohio Sept. 18, 2014). Before both the district court and the appellate court, the plaintiff unsuccessfully argued that the RFC limitation to "occasional interaction" was inconsistent with the ALJ's acceptance of the psychologists' opinions limiting plaintiff to "superficial" interactions. Affirming the ALJ's decision, the Sixth Circuit succinctly rejected that argument as "without merit," concluding that "the ALJ's mental RFC determination was supported by substantial evidence in the record and is not inconsistent with either of the state agency psychologists' opinions." *Reeves*, 618 Fed. Appx. at 275 (emphasis added). The appellate court further reasoned: "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Id.* (additional citation omitted).

Without citation to *Reeves*, however, in 2018 the courts in *this* district began to be persuaded by the argument that "superficial" and "occasional" have distinct and

inconsistent or incompatible vocational meanings in the social security context. In the pivotal case of *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-cv-18-EAS-CMV, 2018 WL 6257432 (S.D. Ohio Nov. 30, 2018), adopted 2019 WL 133177 (S.D. Ohio Jan 8, 2019),[8] this Court held that remand was required because the ALJ failed to explain why he limited Plaintiff to "occasional interaction" instead of "superficial contact," and the terms "are not interchangeable." *Id.* at *4. *Lindsey* chiefly relied on three unpublished district court cases from the Seventh Circuit, as well as on a pre-*Reeves* case in the Sixth Circuit. *See Barker v. Astrue*, No. 5:09 CV 1171, 2010 WL 2710520, at *5 (N.D. Ohio July 10, 2010).[9]

As of this writing, *Lindsey* has been cited nearly sixty times. In *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-cv-339, 2020 WL 3866855 (S.D. Ohio July 9, 2020), R&R adopted, 2020 WL 4334920 (S.D. Ohio July 28, 2020), the court expanded upon its reasoning. There, the state agency psychologists opined that the plaintiff could "interact briefly and occasionally in situations that do not require more than superficial contact with coworkers and supervisors. No contact with the public. No resolving conflicts or persuading others to follow demands." *Id*. at *4. The ALJ gave only "some weight" to the reports after stating that "superficial contact" is "not well defined and vocationally [relevant]." *Id.* at *1, 4. The ALJ explained that he had accommodated Plaintiff's limitations by "limiting [her] to no public contact and occasional interaction with co-workers," which he found "consistent with her conservative treatment, and presentation at mental health visits." *Hutton*, 2020 WL 3866855, at *2.

---

[8]The court reached a similar result a few months earlier in *Johnston v. Comm'r of Soc. Sec.*, No. 2:17-cv-657, 2018 WL 3099605 (S.D. Ohio June 25, 2018), but *Johnston* contained little discussion and did not cite to the same case law.
Besides preceding *Reeves*, *Barker* is distinguishable because it reversed on multiple grounds, including the ALJ's failure to comply with res judicata and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 839 (6th Cir. 1997) by using the same RFC finding as used by the ALJ in a prior proceeding. *See Barker*, 2010 WL 2710520, at *5.

12

This Court reversed, building on *Lindsey*'s original analysis and citing the same three unpublished district court cases from the Seventh Circuit.

> The problem with the ALJ's consideration of Drs. Savitscus's and Zeune's opinions regarding Plaintiff's social interaction limitations is that the terms "occasional" and "superficial" are not interchangeable. *See Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) (" 'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions.") (citations omitted). Thus, <u>courts routinely recognize that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions - including a limitation to "superficial" interaction.</u>
>
> * * *
>
> Put simply, in contrast to the ALJ's rejection of Drs. Savitscus's and Zeune's opinion that Plaintiff was limited to only superficial interactions as "not well defined and vocationally [relevant]," "superficial interaction" <u>is a well-recognized, work-related limitation</u>. The undersigned therefore finds the ALJ's explanation lacking, which necessitates remand. *See Hurley*, 2018 WL 4214523, at *4 (explaining that "occasional" and "superficial" are not interchangeable terms and finding that the ALJ erred in making no attempt to explain the basis of his decision to limit plaintiff to occasional rather than superficial interactions) (citing *Gidley v. Colvin*, No. 2:12-cv-374, 2013 WL 6909170, at *12 (N.D. Ind. Dec. 30, 2013)); *Cote v. Colvin*, No. 16-cv-57-SLC, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) (reversing and remanding where "[t]he ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction").

*Id*. at *4-5 (emphasis added, collecting cases that hold that "superficial" has a different vocational meaning that cannot be equated with "occasional.").

In short, since 2018 a growing number of judges in this district have adopted a fixed vocational definition of "superficial" interactions in dozens of cases, which definition is presumed to be qualitatively inconsistent with "occasional" interactions. That body of case law was the basis for Judge Cole's return of this case to the undersigned. In the cited cases, this Court has reversed: (1) when an ALJ describes the modifier "superficial" as vocationally vague when formulating the RFC; and (2) when the ALJ interprets or

translates an opinion that uses "superficial" into a vocational RFC assessment of "occasional" workplace interactions. As in *Lindsey* and *Hutton*, in the referenced cases the courts agree that "superficial" is readily understood (including in vocational parlance) to refer to the "quality" of "social interaction," while the term "occasional" describes only the "quantity" of "social interaction." *See*, *e.g.*, *William H. v. Comm'r of Soc. Sec.*, No. 3:21-cv-219-CHG, 2022 WL 4591304, at *4-6 (S.D. Ohio Sept. 30, 2022) (ALJ reversibly erred in rejecting superficial as not vocationally defined in light of S.D. Ohio case law that defines the term relative to social interactions); *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-cv-3820-MHW-CMV, 2021 WL 3087639, at *5-6 (S.D. Ohio July 22, 2021) (same, holding that term has been defined "by this Court's caselaw"), R&R adopted, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021); *Garvin v. Comm'r of Soc. Sec.*, No. 2:20-cv-2566-EAS-EPD, 2021 WL 2200423, at *6 (S.D. Ohio June 1, 2021) (describing ALJ's statement that "'superficial,' has been phrased in clearer or more vocationally relevant terms" as "untenable" because term "is a well-recognized, work-related limitation," collecting cases), R&R adopted, 2021 WL 2533191 (S.D. Ohio June 21, 2021); *Crisp v. Comm'r of Soc. Sec.*, No. 2:19-cv-2401-MHW-CMV, 2020 WL 581841, at *3-4 (S.D. Ohio Feb. 6, 2020) (reversing based on ALJ's "inadequate" rejection of "superficial interactions" as "somewhat ambiguous"), R&R adopted, 2020 WL 5640056 (S.D. Ohio Sept. 22, 2020).

Of note, however, most of the referenced case law either fails to cite to *Reeves* entirely or does not discuss its holding that "superficial" and "occasional" are not inconsistent in the specialized context of a vocational RFC finding. But in *Cooper v. Comm'r of Soc. Sec.*, 2018 WL 6287996 (S.D. Ohio Dec. 3, 2018), the court discussed and attempted to distinguish *Reeves* as follows:

14

The Commissioner cites *Reeves v. Comm'r of Soc. Sec.*, which held that a state-agency consultant's opinion that the claimant could "relate to a few familiar others on a superficial basis" was accounted for by limiting the claimant's RFC to "only occasional interaction with the public." 618 F. App'x 267, 275 (6th Cir. 2015). The *Reeves* decision, however, did not specify the amount of weight given to the state-agency consultant's opinion and did not analyze the distinction between "superficial" and "occasional" contact. The undersigned therefore does not find *Reeves* to require a different result.

*Id.* at *4 n.2.

Reasonable jurists can disagree. Unlike *Cooper*, the undersigned does not find *Reeves* to be easily distinguished. The district court in *Reeves* specified that the ALJ assigned "great weight" to the two agency psychologists' opinions, and the Sixth Circuit referenced the same record when it reasoned that the ALJ was not required to adopt the agency opinions "wholesale" (i.e., use "superficial") despite according the opinions "great weight." And while it is true that neither the Sixth Circuit nor the lower district court went into a lengthy discourse about the alleged "distinction" between "superficial" and "occasional," both courts <u>explicitly rejected</u> the argument that "occasional contact with the public" was *"inconsistent with"* with the psychologists' opinions that plaintiff could "relate to a few familiar others on a superficial basis." *See Reeves v. Colvin*, 2014 WL 4675321, at *8 (N.D. Ohio Sept. 18, 2014) ("the ALJ's RFC assessment is consistent with the state agency psychologists' opinions, plaintiff's GAF scores, and plaintiff's testimony"); *accord Reeves*, 618 Fed. Appx.at 275. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) states that an ALJ "must explain why [an] opinion was not adopted" only "if the RFC assessment conflicts with an opinion from a medical source." Because the Sixth Circuit expressly held that an RFC finding of "occasional contact with the public" is not inconsistent with the ability to "relate…superficial[ly]," the ALJ was not required to provide additional explanation. In other words, the Sixth Circuit clearly viewed any "distinction" between the

adjective "superficial" and the term "occasional" interactions as irrelevant, because the terms are not in conflict but are consistent in the context of a vocational RFC finding.

While in the minority in this district, the undersigned is not the sole judge to reject the reasoning employed in *Lindsey*, and/or to find *Reeves* to be the more persuasive authority. A review of *Hutton* after remand highlights the split among jurists in this district alone. Following remand, the ALJ again rejected "superficial" as vocationally ambiguous. Plaintiff filed a second judicial appeal, which was assigned to a different magistrate judge and district judge. In the second go-round, *Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5315-JLG-KLL, 2023 WL 1857822 (S.D. Ohio, Feb. 9, 2023), this Court found no error in the ALJ's refusal to include "superficial" in the RFC on grounds it was not vocationally relevant. After reiterating that the ALJ alone and not this Court is tasked with formulating the RFC, *see* 20 C.F.R. § 416.946(c), the Court cited to *Reeves* (not cited in *Hutton*) and offered this reasoning to reconcile its differing view:

> This matter was previously remanded because the ALJ failed to "consider whether Plaintiff did, in fact, require a limitation to only superficial interaction because he incorrectly concluded that such a limitation is either vague or was otherwise accommodated by limiting Plaintiff to only occasional interaction." … On remand, the ALJ again declined to include a limitation to "superficial" interactions since "[t]here is no one accepted definition of superficial in this context because it is not defined in the *Dictionary of Occupational Titles* (DOT) or its companion resources, rendering use of the term alone fraught with ambiguity." (Tr. 2190). However, the ALJ explained that, while not adopting the term "superficial," the RFC he crafted "nevertheless limits the quality of interaction: brief (quantity) interactions with supervisors and coworkers *sufficient to learn the simple, repetitive position and exchange appropriate work information without negotiation, persuasion, or conflict resolution* (quality)." … The ALJ further explained that the RFC "limitation itself describes to what extent [plaintiff] can interact with others in a work setting and thus defines the quantity of interactions in addition to limiting the quantity" and includes a limitation "related to the ability to tolerate change in the work setting." (*Id.*)
>
> Plaintiff objects to the ALJ's refusal to include a limitation to superficial interactions and contends that the ALJ's attempt to replace the term "superficial" with an ad hoc definition of the word "is entirely arbitrary" and

"renders the ALJ's definition of the term 'superficial' unreviewable." …The issue, however, is not whether the ALJ appropriately defined the word "superficial." Indeed, the ALJ is under no obligation to impose a superficial interactions limitation. *See Reeves*, 618 F. App'x at 275 (6th Cir. 2015). The issue is whether the ALJ explained the basis for the RFC determination. *See Hankinson v. Comm'r of Soc. Sec.*, 2020 WL 240812, at *2. The Court concludes that he did.

*Anissa H.*, 2023 WL 1857822, at *9, R&R adopted 2023 WL 2692415 (S.D. Ohio March 29, 2023)[10]; *accord Richard S. v. Comm'r of Soc. Sec.,* No. 2:22-cv-2176-EAS-KLL, 2023 WL 2805347, at *14 (S.D. Ohio, April 6, 2023) (citing *Reeves* and discussing disagreement in case law including lack of definition of "superficial" in the DOT or SCO, affirming because ALJ adequately defined the phrase in the RFC and "nitpick[ing] the ALJ's definition of 'superficial'" risks "invading the zone of choice within which the Commissioner operates") (additional citation omitted, R&R pending)).

The undersigned is persuaded that the adoption of a fixed "qualitative" vocational definition of "superficial" in *Lindsey et seq.* invades the ALJ's singular authority to formulate the RFC. Common antonyms for "superficial" include "deep," "penetrating, and "profound." Merriam-Webster.com Thesaurus, s.v. "superficial," accessed July 31, 2023, https://www.merriam-webster.com/thesaurus/superficial.        [https://perma.cc/QK4D-PMSP]. The *Lindsey* court's emphasis on the "qualitative" nature of the vocationally-undefined adjective "superficial" as if in conflict with the defined "quantity" of interaction sets up a false dichotomy that ignores the reality that time-limited "occasional" interactions in an unskilled work setting are reasonably understood to require only surface-level interactions, and are unlikely to involve deep, penetrating or profound (i.e., non-superficial) conversations or interactions. This reality is particularly true when, as here,

---

[10]The Court remanded a second time based on a different error related to the ALJ's failure to consider VA's disability determination.

the mental RFC findings also limit the plaintiff to unskilled work that involves only simple instructions that can be learned in 1 month or less, with simple decision-making, and with no more than occasional changes in a routine work setting, at a pace not set by an external source.

As referenced in *Anissa H.*, the Social Security Agency could have defined "superficial" in vocational terms, if it had chosen to do so. The Social Security Act, as amended, along with Regulations, Social Security Rulings (SSRs), Acquiescence Rulings (ARs), the Program Operations Manual System (POMS), and the Hearings, Appeals, and Litigation Law Manual (HALLEX) all provide the basic guides for adjudication and review of Social Security claims by the Commissioner. Yet none of these sources dictate what an agency psychologist might mean when describing a claimant's ability to "interact superficially" in the Paragraph B domain of interacting with others in the workplace on a Psychiatric Review Technique Form.

POMS DI 24583.005 explains how the Psychiatric Review Technique Form ("PRTF") is completed by agency psychologists at the initial and reconsideration levels. In the case presented, the PRTF assessments agreed that Plaintiff's moderate limitations and an ability to "interact superficially" with others was fully consistent with the ability to perform some fulltime unskilled work. The psychologists found "moderate" limitations in three types of interactions but "no[] significant[]" limitations at all in two other areas listed under the domain of interacting with others. (Tr. 110, 128). Elsewhere on the same form, they summarized their opinions about Plaintiff's RFC limitations in other Paragraph B domains, opining that he is able to "understand and remember simple instructions," can "carry out and complete simple 1-3 step job tasks…," and "retains the ability to complete

job tasks in a relatively static work setting where change is infrequent and can be shown or explained to him." (Tr. 110-111, 127-129).

In addition to PRT forms completed by agency psychologists, the DOT and SCO provide insight for an ALJ tasked with determining the RFC. Without using the word "superficial," those sources identify specific types of workplace interactions, such as mentoring, negotiating, instructing, supervising, diverting, persuading, speaking-signaling, serving, and taking instructions-helping. SCODICOT Appendix E; *see also Reese v. Saul,* No. 3:18-CV-442-HBG, 2020 WL 1312703, at *14 (E.D. Tenn. Mar. 19, 2020) (explaining that "the 'DOT ranks the degree of interaction with people in each job type' on a scale from 0 (Mentoring) to 8 (Taking Instructions-Helping), going from the highest to the lowest level of functioning") (quoting *Kane v. Saul*, No. 3:18-CV-746 (HEH), 2019 WL 7562760, at *15 (E.D. Va. Aug. 20, 2019), *report and recommendation adopted by*, 2020 WL 130134 (E.D. Va. Jan. 10, 2020)). The lack of guidance or authority restricting an ALJ's ability to interpret "superficial" used by an agency psychologist on a PRTF assessment, or to formulate how that opinion should be translated into a vocational RFC finding, further confirms the lack of error here.

Other cases in this district agree that an ALJ does not err in describing "superficial" as vocationally vague, or in interpreting an opinion that references "superficial" interaction in a manner that varies from the "qualitative" vocational definition that excludes "occasional" interactions as suggested by this Court in *Lindsey et seq*.

> "Superficial" social interaction has no regulatory definition. And while the state agency psychologists opined Plaintiff should be limited to superficial interactions, neither defined what "superficial" meant. Accordingly, precisely how the RFC's limitations differ from superficial interaction limitations - if they do at all - is unclear. Still, even if the depth of interaction described in the RFC exceeds "superficial" interaction, the ALJ was not required to adopt the state agency psychologists' opinions in their entirety.

*Sasha M. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2101-EAS-KAJ,  2023 WL 1793536, at *9 (S.D. Ohio, Feb. 7, 2023) (R&R pending); *Andrea B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-055-KAJ, 2023 WL 128288, at *7 (S.D. Ohio, Jan. 9, 2023) (affirming because "no regulation from the Social Security Administration requires an ALJ to analyze superficial interactions a specific way" and the "heart of the case law" emphasizes adequate explanation, "not the need…to include buzz words like 'superficial interactions' in order to avoid remand."); *Angela K. v. Comm'r of Soc. Sec.*, No. 1:21-cv-088-MRB-SKB, 2022 WL 3151890, at *3 (S.D. Ohio, Aug. 8, 2022) (rejecting claim based on ALJ's failure to adopt Plaintiff's restrictive definition of "superficial" interaction because "neither the DOT nor controlling case law defines the meaning of that term" but remanding on other grounds), R&R adopted 2022 WL 3701576 (S.D. Ohio Aug. 26, 2022); *Stamper v. Comm'r of Soc. Sec.*, No. 1:20-cv-467-TSB-KLL, 2021 WL 5577405 (S.D. Ohio, Nov. 30, 2021), R&R adopted 2022 WL 1183234 (S.D. Ohio April 21, 2022) (rejecting argument that ALJ's translation of "superficial" interaction into the "vocationally relevant" terminology of "occasional" was improper, affirming in part because the ALJ explicitly acknowledged the use of the term "superficial" and explained that she interpreted its meaning in a manner consistent with the record as a whole including precluding plaintiff from tandem or shared tasks or from working in a customer service capacity); *May v. Comm'r of Soc. Sec.*, No. 3:19-cv-47-WHR-SLO,  2020 WL 103579, at *5 (S.D. Ohio Jan. 9, 2020) (finding no error where ALJ stated he did not use "superficial" contact because the DOT does not define it, and went beyond "occasional" contact by including no contact with the public), R&R adopted 2020 WL 1227208 (S.D. Ohio March 13, 2020).

Sister courts within the Sixth Circuit similarly reject the holding that "superficial" is a vocationally relevant term with a fixed "qualitative" meaning that is incompatible or

inconsistent with the quantity of interactions in an RFC finding. In essence, those courts agree that "superficial" interactions in many work environments may be reflected by and entirely consistent with the quantity of interaction. Thus, an ALJ reasonably might understand superficial interaction as excluding only deeply involved or emotional conversations with supervisors and coworkers, but as consistent with simple 1-3 step instructions.

This concept of contextual vocational meaning under the Social Security Act was addressed by the Northern District of Ohio in a 2022 case that distinguished the contrary case law from the Southern District of Ohio:

> Some courts have gone so far as to reject the explanation that "superficial" is not a vocationally relevant term, and have described "superficial" interaction as a "well-recognized, work-related limitation." *See, e.g., Swank v. Comm'r of Soc. Sec.*, No. 2:20-CV-2396, 2021 WL 1345420, at *5 (S.D. Ohio Apr. 12, 2021), *report and recommendation adopted*, No. 2:20-CV-2396, 2021 WL 1909701 (S.D. Ohio May 12, 2021). The undersigned disagrees, and finds on the contrary that it is of very direct and specific import to the issues presented in this case that "superficial" interaction does not have a defined meaning under the DOT or SCO. It is also notable that dictionary definitions do not provide further clarity as to what work-related interactions are intended to be included or excluded by a limitation to "superficial" interactions. *See, e.g.,* "Superficial." *Merriam-Webster's Unabridged Dictionary, Merriam-Webster*, https://unabridged.merriam-webster.com/unabridged/superficial. Accessed 11 Jan. 2022 ("not penetrating beneath or farther than the easily or quickly apprehended features of a thing: concerned only with the obvious or apparent"; "lacking in depth or substantial qualities: not profound"; "presenting only an appearance or a semblance: not far-reaching, significant, or genuine").
>
> Given the lack of a defined meaning for the term "superficial," it is not clear from the record what specific manner of communications the psychological consultants intended to permit or exclude when they limited Ms. Beulah to "superficial interaction," "no over-the-shoulder supervisor scrutiny," or interactions "on a superficial basis." More importantly, if the ALJ had posed a hypothetical question limiting Ms. Beulah to "superficial interactions," as

Ms. Beulah argues she should, SSA guidance suggests that it would have been improper for the ALJ to simply adopt that limitation without articulating a clear definition of the term on the record. *Compare Modro*, 2019 WL 1986522, at *6-7 (finding ALJ "reasonably converted and incorporated [medical] opinions into vocationally relevant terms" in the RFC, including a limitation to "occasional superficial contact ... with superficial meaning no over-the-shoulder supervision; no tandem assignments; and no sales type transactions or customer-service interaction with the public."). Moreover, in the event that the VE had provided jobs based on an RFC limiting Ms. Beulah to "superficial interactions," it would have been unclear, absent further explanation from the VE, what specific communications the VE interpreted the term "superficial" to permit or exclude.

In light of the foregoing findings and authority – specifically, that the Sixth Circuit has upheld the adoption of a similar RFC in similar circumstances, that the term "superficial" does not have a defined meaning for purposes of vocational testimony, that the ALJ clearly indicated that the undefined term was excluded for purposes of "clarity," and that the underlying medical opinions were given only partial weight – the undersigned finds that Ms. Beula has not met her burden to demonstrate that the ALJ erred in failing to adopt the term "superficial" as a part of the mental RFC limitations applied in the case.

*Beulah v. Comm'r of Soc. Sec.*, No. 1:20-cv-2271, 2022 WL 1609236, at *30-31 (N.D. Ohio March 25, 2022) R&R adopted 2022 WL 1606286 (N.D. Ohio May 20, 2022); accord *Stoodt v. Com'r of Soc, Sec.*, 2022 WL 721455, at *16-17 (N.D. Ohio Jan. 13, 2022), (disagreeing with case law that describes "superficial interaction" as a "well-recognized, work-related limitation" and pointing out that VE testimony must be based on the information in the DOT, the SCO, or his/her expertise, but reversing because the court could not determine if the RFC was in conflict with the psychological opinions, adopted 2022 WL 716105 (N.D. Ohio March 10, 2022). Courts in Kentucky and Michigan have reached comparable conclusions. *See Tara  B. v. Comm'r of Soc. Sec.*, No. 0:22-CV-065-CHB, 2023 WL 4274955, at *5-6 (E.D. Ky. June 29, 2023) (finding no error because "superficial" is not defined by regulations or the DOT, and the ALJ's use of  "occasional"

was "sufficiently qualitative");[11] *Hammons v. Comm'r of Soc. Sec.*, 2023 WL 2446163, at *5 (E.D. Mich., Jan. 23, 2023) (noting reliance on *Reeves* was "not necessarily misplaced," declining to follow contrary Southern District of Ohio cases and holding that the Commissioner adequately addressed the quality of contact by limiting plaintiff to no tandem tasks).

The above discussion of recent unpublished case law reflects disagreement within the Sixth Circuit.[12] Because the Social Security Act is interpreted regularly by federal courts across the country, published case law from other circuits also is persuasive. Relevant here, the Seventh Circuit recently distinguished the case law underlying *Lindsey* and rejected the premise that ordinary words have a fixed vocational meaning that is binding upon an ALJ tasked with assessing a plaintiff's RFC. In *Reynolds v. Kijakazi*, 25 F.4th 470 (7th Cir. 2022), the court first distinguished the line of unpublished authority cited in *Lindsey et seq.*, noting that it has "no precedential value." *Id.* at 473 and n.1. Turning to the merits, the court rejected the argument - analogous to the "superficial" argument adopted in the referenced case law - that the agency psychologists' opinions that plaintiff's interactions should be "brief" required any type of "qualitative" limitation beyond the ALJ's RFC finding of "occasional." *Id.*, 25 F.4th at 474.[13]

---

[11]In *Tara B.*, the court evaluated two alleged disability periods, finding no error in the RFC as determined for the first period based in part on the ALJ's assessment that Plaintiff was limited in the quantity of interaction to "occasional" and in the quality of time to "no tandem or shared tasks, no over-the-shoulder supervision, and no customer service work." *Id.* at *5. But for the second period, the *Tara B.* court explicitly rejected the premise that "only occasional social interaction does not sufficiently account for the psychological consultants' <u>*qualitative*</u> limitation to only 'superficial'" interactions, citing *Reeves* as authority that "this limitation, on its face, <u>is sufficiently qualitative</u>." *Id.* at *6 (emphasis added).

[12]Only Supreme Court and published Sixth Circuit case law is binding on this Court. *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 n.4 (6th Cir. 2007).

[13]In contrast, the same plaintiff's counsel appearing here recently persuaded the judge who authored *Lindsey* to broaden her reasoning to the word "brief." *See Charlee N. A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3085, 2023 WL 312791, at *4 (S.D. Ohio, Jan 19, 2023) (holding that ALJ's translation of psychologists' opinions endorsing "brief" interactions into RFC finding of "occasional" interactions was error, reasoning

The Ninth Circuit has likewise rejected the argument that an ALJ's RFC finding of "occasional" interactions is inconsistent with opinion evidence that limits the claimant's ability to relate to others to "superficial contact," finding "no obvious inconsistency." *See Shaibi v. Berryhill*, 883 F.3d 1102, 1106-07 (9th Cir. 2017). As in the above-captioned case, the psychologists in *Shaibi* had not defined what they intended by "superficial contact" in the work setting. But contrary to the suggestion that "superficial" has a fixed vocational meaning for purposes of an RFC finding, the Ninth Circuit wrote:

> With regard to Dr. Lochner's opinion, Shaibi argues that the ALJ ignored her conclusion that he was limited to "superficial contact" with coworkers. Shaibi misstates Dr. Lochner's opinion; in fact, she wrote that Shaibi could "*relate to others* on a superficial work basis" (emphasis added). The ALJ could reasonably have concluded that, given Shaibi's ability to "relate to others on a superficial work basis," he could perform essential workplace functions, even if he could not easily develop deeper emotional bonds with his coworkers.
>
> Such a conclusion is all the more reasonable in light of the "Summary Conclusions" worksheet that Dr. Lochner submitted along with her written comments. On that worksheet, she indicated that Shaibi was "not significantly limited" in terms of his ability to work in coordination with or proximity to others; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; or to maintain socially appropriate behavior and basic standards of cleanliness. Viewed in the context of her specific conclusions on that worksheet, Dr. Lochner's statement that Shaibi could "relate to others on a superficial work basis" simply confirms that she believed Shaibi could communicate with coworkers and supervisors as necessary.

*Shaibi v. Berryhill*, 883 F.3d at 1107. In similar fashion to *Reeves*, *Shaibi* highlights the concept that what an agency psychologist means by describing a claimant's ability to engage in workplace interactions as "superficial" varies based on context, and may be appropriately interpreted by the ALJ as consistent with or equivalent to the vocational

---

that even though the term "brief" is not defined in the DOT or SCO, it "requires no explanation" because it means "short in duration.").

definition of "occasional" if supported by the record. *Accord Quintanilla v. Berryhill*, No. CV 16-01043-DFM, 2017 WL 1433306, at *4 (C.D. Cal. April 21, 2017) (finding no inconsistency, reasoning: "Given that the ALJ limited Plaintiff to carrying out 'simple' instructions, performing 'simple, routine, and repetitive tasks,' and 'occasional interaction with coworkers and supervisors,' it follows that such interaction would be brief and superficial.").

To counter the authority discussed above, Plaintiff offers one more authority for this Court's consideration: an Appeals Council order in an unrelated case in which that administrative body seems to agree with the *Lindsey* and *Hutton* view. That said, the undersigned finds the order to be unpersuasive. In the judicial appeal that preceded the referenced order, *Paul B. v. Comm'r of Soc. Sec.*, No. 3:21-cv-02351-JRK, the Northern District of Ohio entered a standard order based on the parties' joint stipulation to remand that merely remanded "for further administrative proceedings pursuant to Sentence Four." *See id.*, No. 3:21-cv-02351-JRK (Doc. 12) (N.D. Ohio May 10, 2022). In contrast, the later order of remand from the Appeals Council to the ALJ incorporated language from the parties' stipulated agreement:

> "[S]uperficial interaction" is a term "that is readily defined, understood and applicable to a work setting, as it speaks to the depth, kind and quality of social interactions, and indicates that the claimant could not have sustained more than shallow or cursory interactions with others, i.e., coworkers, the general public, and/or supervisors. This term is distinguishable and distinct from "occasional" which describes the frequency of interaction with others and how much interaction the claimant could tolerate on a sustained basis.

(*See* Doc. 14-1 at 3-4, PageID 1170-1171). The Appeals Council's language closely aligns with *Lindsey* and *Hutton*.[14] But a single Appeals Council order in an unrelated case

---

[14]The same counsel has represented the claimants in many cases that follow *Lindsey*.

is not binding on the Commissioner and has no precedential value beyond the case in which it was entered.

More persuasive than the singular Appeals Council order in *Paul B.* or the unpublished *Lindsey et seq.* line of authority is the fact that no controlling authority provides any vocational definition of "superficial" work-place interactions. The undersigned also finds *Reeves*, *Reynolds*, and *Shaibi* to be highly persuasive on the issue presented, as well as other unpublished district court cases within the Sixth Circuit that follow *Reeves* and/or reject the underlying premise of *Lindsey*, *et seq.* In sum, the undersigned finds no error in the ALJ's rejection of the non-reviewing psychologists' narrative phrase "interact superficially" as vocationally vague.

### 3. The Evidentiary Support for the ALJ's RFC Finding that Plaintiff can "Occasionally" Interact with Others

The only place that the phrase "interact superficially" appears in the record is in the identical PFRT assessments comple*t*ed by the two non-examining psychologists, whose opinions the ALJ found persuasive only "in part." In recommitting this case to the undersigned, Judge Cole's second query asks "whether in fact the ALJ also rejected the 'superficial' interaction limitation on evidentiary grounds, and if so, where in the record the ALJ articulated that finding."

Above, the undersigned has explained why the ALJ committed no legal error by declining to adopt "superficial" as vocationally vague in the context of assessing the RFC. Based on *Reeves* and other authority as discussed, the ALJ was entitled to reject the adjective "superficial" whether or not he found the non-reviewing psychologists' opinions to be fully persuasive. *See Reeves*, 618 Fed. Appx. at 275 (finding no inconsistency between "superficial" opinion and "occasional" RFC finding, but alternatively holding that

even when giving "great weight" to an opinion, "there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim" or "wholesale"); *accord Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir.  2009) (citing C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). An ALJ need not explain his failure to use a specific adjective contained in a consultant's report when: (1) the term is rejected on grounds that it is vocationally undefined; (2) the term is not inconsistent with the RFC as determined; and (3) the ALJ found the opinion to be persuasive only in part.

It follows that the ALJ had no legal obligation to also explain his decision not to use the word "superficial" in the RFC on evidentiary grounds. Rather, the ALJ only had to provide sufficient reasoning and analysis to build a "logical bridge" sufficient for this Court to determine <u>whether the mental RFC as determined is substantially supported by the evidentiary record</u>. This Court must affirm even if an alternative mental RFC that included a limitation to "superficial" interaction would have been substantially supported, so long as the limitation to "occasional" interaction was within the "zone of choice." Here, the ALJ explained that his RFC "is supported by the totality of the medical opinion evidence, the objective medical findings, and other medical evidence found in the record" including the assessment of Plaintiff's "subjective complaints…, documented subjective reports, [and] the claimant's medical history." (Tr. 58). Having reassessed the ALJ's written analysis and reading his opinion as a whole, the undersigned again concludes that the mental RFC is substantially supported.

### a. Plaintiff's Subjective Statements

Notably, Plaintiff does not question the ALJ's adverse assessment of his subjective complaints. That assessment both supports the ALJ's conclusion that Plaintiff is able to interact occasionally with others in a workplace setting, and undermines any claim of

greater mental limitations in interacting with others. The ALJ explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 56). For example, the ALJ acknowledged that Plaintiff "alleged that he has difficulty engaging in social activities and spending time in crowds due to anxiety and panic attacks," (Tr. 49), but did not find statements about his social withdrawal and discomfort in crowds to be persuasive evidence of disabling limitations in the workplace. Focusing on the workplace environment, the ALJ noted that Plaintiff had never reported any difficulty in getting along with others "including authority figures," and summarized Plaintiff's reports of daily interactions in his personal life including daily visits from his girlfriend, living with and talking to his mother and daughter daily, shopping with the assistance of friends, running errands, and living at friends' homes during periods of homelessness. (Tr. 49). Contrary to subjective statements that he has difficulty "being around others," Plaintiff's Function Report stated that he shopped with help from a friend and had weekly phone conversations. (Tr. 51-52). Thus, Plaintiff's own statements support the ALJ's conclusion that he can occasionally interact with others in the manner required to perform basic work activity.

### b. Medical Records

Next, the ALJ evaluated all relevant medical evidence. Most of the ALJ's discussion of the medical records pertained to Plaintiff's physical impairments, including his noncompliance with recommended treatments. (*See*, *e.g.*, Tr. 53-54). Tellingly, the ALJ's focus on Plaintiff's physical impairments flowed from the nearly complete absence of relevant mental health records.

It was Plaintiff's burden to present evidence that proves his disability. Plaintiff offered a single January 31, 2020 document that stated diagnostic information from a master's level therapist, but included "no information about form of treatment, clinical findings, or progress notes." (Tr. 55, citing Tr. 1084). Because there were no clinical mental health records to support any limitation in Plaintiff's ability to interact with others in the workplace, the ALJ considered the records of other treatment providers who consistently recorded normal mental status examinations, normal judgment, behavior, mood and affect. (Tr. 54-55). The ALJ discussed a July 2018 note that he was "alert, oriented x3, normal motor function, normal sensory function, no focal deficits, affect normal, judgment normal, and mood normal," and a January 2019 note that he "was capable to do all his own activities of daily living without assistance." (Tr. 55). At another visit in February 2019, Plaintiff was again found to be "alert and oriented x3, normal motor function, normal speech, no focal deficits, affect normal, mood normal." (*Id*.)

The ALJ's conclusion about this body of evidence was direct and to the point: "The medical record did not establish additional restrictions." (*Id.,* emphasis added). To the extent that a reviewing court would find "superficial" to be inconsistent with or more limiting than the "occasional" interaction limitation found by the ALJ, Plaintiff points this Court to no contrary medical records that would support any greater limitation in his ability to engage in work-related interactions. Based on the records cited by the ALJ as well as the lack of any contrary evidence, the undersigned finds the medical records to substantially support the mental RFC as determined.

### c. Mental Health Opinion Evidence

Last, the ALJ considered three opinions offered by agency psychologists. As discussed, James Rosenthal, Psy.D performed a consultative examination on July 10,

2018 and diagnosed major depression – mild; and adjustment disorder with anxiety. (Tr. 54). The ALJ summarized the following CE report findings:

> The psych CE mental status findings included his speech was average in volume and average in pace; speech was 100 percent intelligible; sensorium and cognitive functioning were essentially intact, except there appeared to be some deficits in fund of knowledge and ability to use abstract thinking; and sad affect and low average energy level (7F/3-4). The claimant noted he had never been psychiatrically hospitalized and not currently engaged in mental health treatment, although "two years ago he went to counseling" (7F/2). The claimant reported his activities of daily living included: he lived with his mother and daughter; his mother did a lot of housework; he paid bills in cash; he drove short distances 2-3 times a month; ran errands some days; his mother did the grocery shopping; he bathed once a day; had difficulty reading due to poor concentration; watched TV an hour a day; used a smartphone to call/text; attended his scheduled doctor appointments and took his medication daily; his girlfriend visited daily in the afternoon; talked to his mother/daughter daily; sat outside when weather was "nice"; and he slept between 10 p.m. until 11 am.

(Tr. 54). Overall, the ALJ found Dr. Rosenthal's opinion to be "supported by explanation and generally consistent with the objective clinical findings," and explained that Dr. Rosenthal's clinical examination findings supported the RFC finding of "occasional interaction with others and occasional changes in work setting as well as no assembly line pace work." (*Id.*)

A close read of Dr. Rosenthal's CE report confirms that the reasonableness of the ALJ's analysis. In his clinical observations, Dr. Rosenthal did not observe limitations in Plaintiff's ability to interact or opine that Plaintiff could interact only "superficially" at home or in the workplace. Instead, he observed that Plaintiff was "cooperative and pleasant during the exam." (Tr. 876). And - typographical errors notwithstanding – he concluded that Plaintiff had <u>no</u> limitations at all in responding appropriately to supervision and to co-workers, and "[no] pattern of conflict with others in work or social settings," despite Plaintiff's subjective report of a decrease in social activities after his alleged onset "due to a lack of motivation and interest." (Tr. 875-876). Dr. Rosenthal further opined that

30

Plaintiff "could understand and recall a one-step work assignment," which the ALJ considered and found "persuasive in part." (Tr. 56).

Two agency psychologists who reviewed Dr. Rosenthal's report at the initial and reconsideration levels agreed that Plaintiff has no more than "moderate" limitations in all functional areas including his ability to interact with others. (Tr. 57). Offering identical opinions on a standard form, both found that Plaintiff "can understand and remember simple instructions; can carry out and complete simple 1-3 step job tasks that are low stress and that do not have strict production standards or requirements to perform at a fast pace; can interact superficially; and can complete job tasks in a relatively static work setting where change is infrequent and can be shown or explained to him." (*Id*.) But neither offered any definition of what they meant by "interact superficially."

The ALJ found their opinions to be "supported by explanation and generally consistent with the objective clinical findings" but only "persuasive in part" based on "vocationally vague" phrases. (*Id*. 57) The ALJ ultimately limited Plaintiff to "understanding, carrying out, and remembering simple instructions in work that can be learned in 1 month or less; making simple work-related decisions; occasionally interacting with supervisors, co-workers, and the public; occasionally tolerating changes in a routine work setting; and performing work in which the pace is not set by an external source over which the individual has no control such as assembly line work." (Tr. 56). As evidentiary support for those mental RFC findings, the ALJ reasoned that "a preponderance of the evidence[15] including [Dr. Rosenthal's] consultative psychological examination report

---

[15]Although the ALJ found a "preponderance" of evidence, this Court must affirm so long as "substantial" evidence supports his RFC finding and ultimate decision. "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994).

supports occasional interaction with others and occasional changes in work setting as well as no assembly line pace work." (*Id*.)

### d. The Totality of the Record

An ALJ need not restate all the evidence that he has expressly considered in every section of his written opinion. Nor must each RFC limitation be supported by any particular medical opinion, so long as the RFC is supported by the record as a whole. *See Coldiron v. Comm'r*, 391 Fed. Appx. 435, 439 (6th Cir. 2010); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. at 157. Nor does a court engage in impermissible post hoc rationalization when it carefully reviews the ALJ's analysis in the context of the record as a whole. *See*, *e.g.*, *Farmer v. Comm'r of Soc. Sec.*, No. 2:19-cv-2000, 2020 WL 1482319, at *3 (S.D. Ohio, 2020) (rejecting claim of post hoc rationalization even though the ALJ did not expressly mention that a provider's opinions were expressed on checkbox forms); *Austin v. Comm'r of Soc. Sec.*, No. 1:12–CV–728, 2014 WL 897139, at *3 (S.D. Ohio March 6, 2014) (overruling objection of "post hoc rationalization" because consideration of additional supporting evidence "constitutes a thorough and correct analysis of the record evidence to determine whether, as a whole, it is consistent with the evidence relied upon by the ALJ.").

The ALJ expressly discussed Plaintiff's subjective statements, the medical records showing normal speech, mood and affect, the lack of mental health treatment records or other objective or clinical records to support greater limitations, and the opinion evidence (with a focus on statements in the CE report). Based on a review of the opinion as a whole, the undersigned concludes that the ALJ built a "logical bridge" to support his mental RFC determination that Plaintiff does not suffer from more extreme limitations in his ability to interact with others in the workplace. *Accord Cox v. Com'r of Soc. Sec.*, 2022

WL 4102741, at *2 (N.D. Ohio, Sept. 8, 2022) (rejecting plaintiff's similar claim that ALJ failed to sufficiently explain basis for finding "occasional" rather than "superficial" interactions, where "[t]he ALJ expressly indicated that he found the opinions of the state agency psychologists only somewhat persuasive, and specifically pointed to medical evidence in the record supporting this determination."); *see also Carrie C. v. Comm'r of Soc. Sec.*, No. 2:21-cv-680-SDM-KAJ, 2022 WL 1951554, at *5 (S.D. Ohio June 6, 2022) (holding that ALJ provided a "meaningful explanation" for his failure to adopt a "superficial" interaction limitation based on the consultative exam and the "general medical evidence" including treatment notes that described plaintiff as "cooperative, calm, and talkative" and "pleasant."), R&R adopted 2022 WL 2835060 (S.D. Ohio July 20, 2022).

### 4. Harmless Error Analysis

In the December 2022 R&R, the undersigned suggested that even if it were error to describe "superficial" as vocationally ambiguous, any error was harmless on the record presented. *See Francis v. Comm'r of Soc. Sec.*, No. 2:17-cv-1022-GCS-CMV, 2018 WL 4442596, at *6 (S.D. Ohio Sept. 18, 2018), R&R adopted, 2018 WL 4932081 (S.D. Ohio Oct. 11, 2018) (failure to adopt "superficial" was harmless because five of the six jobs required only limited relationships where interaction with others was "not significant" based on DOT descriptions) and *Cissner v. Berryhill*, No. 3:16-cv-121-SLO, 2017 WL 3821461, at *10 (S.D. Ohio Sept. 1, 2017) (same, finding harmless error based on DOT People rating of 8 that specified that interactions were "Not significant" and because unskilled jobs "relate to working with things (rather than data or people)"). Judge Cole's third question invites consideration of "[w]hether any error the ALJ may have committed in rejecting the 'superficial' interaction limitation can be subject to harmless error analysis

in this Court," based on case law that "raises the question whether *Francis* and *Cissner* were correctly decided." (Doc. 19 at 3, PageID 1209).

Arguably there is no need for the Court to reach this issue in light of the foregoing conclusions that: (1) the ALJ committed no legal error in describing the term "superficial" as "vocationally vague" or in declining to use that term in the RFC finding; and (2) the ALJ's RFC finding that Plaintiff could engage in "occasional" workplace interactions was substantially supported by the evidentiary record as a whole. Still, because a reviewing court may disagree, I proceed to the third question.

Nearly all of the errors made by an ALJ in social security cases are subject to harmless error analysis. Courts "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Plaintiff here does not allege a failure to comply with mandatory procedural requirements that deprived him of substantial rights; therefore, the alleged error does not require reversal in the absence of prejudice.[16] "No principle of administrative law or common sense requires us to remand a case in quest of a perfect

---

[16]The undersigned is unpersuaded by the case cited by Judge Cole that suggests that harmless error analysis might not apply. In *Amber L. v. Comm'r of Soc. Sec.*, No. 3:21-cv-202-MJN-CHG, 2022 WL 2948952, at *6 (S.D. Ohio July 26, 2022), R&R adopted, 2022 WL 3226351 (S.D. Ohio Aug. 10, 2022), the court reversed in part based on the ALJ's critical *procedural* error – the failure to articulate "supportability" when rejecting a medical opinion involving "superficial" interactions. Yet the court also stated that "[t]he Sixth Circuit Court of Appeals has not addressed whether the failure to incorporate a limitation for superficial social interaction constitutes harmless error and there is no consensus among the judges in this district regarding the issue."). Because harmless error analysis cannot be applied to critical procedural errors, that added analysis is arguably dicta. In any event, the Sixth Circuit has consistently held that harmless error applies except when a procedural error deprives a claimant of substantial rights. And in *Reeves*, the Sixth Circuit held the failure to incorporate a limitation to "superficial" interaction was not error at all. As for the "lack of consensus" on the issue, the case cited by *Amber L.* did not hold that harmless error analysis was inapplicable, but that the error was not harmless. *Id.* (citing *Crisp v. Comm'r of Soc. Sec.*, No. 2:19-CV-2401, 2020 WL 5640056, at *2 (S.D. Ohio Sept. 22, 2020) (Watson, D.J.)).

opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005).

Even jurists who have fully embraced the approach taken in *Lindsey* and *Hutton* have applied harmless error analysis when considering an ALJ's rejection of the term "superficial" as "vocationally irrelevant."[17] For example, in *Chad T. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00052-CHG, 2022 WL 4355001, at *8 (S.D. Ohio, Sept. 20, 2022) (appeal pending), the court acknowledged that the ALJ had described "superficial" as "vocationally irrelevant or undefined" and that plaintiff had "correctly describe[d] the [favorable] case law" in this district. However, the court found the error to be harmless because the ALJ accounted for "superficial contact" in the RFC by limiting the plaintiff to "the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts." *Id.*; *contrast Kimberly C. v. Comm'r of Soc. Sec.,* No. 2:20-cv-6059-MHW-EAD, 2022 WL 336406, at *8 (S.D. Ohio, Feb. 4, 2022) (holding that plaintiff met her burden to prove error was not harmless); *Crisp v. Comm'r of Soc. Sec.*, No. 2:19-CV-2401, 2020 WL 5640056, at *2 (S.D. Ohio Sept. 22, 2020) (Watson, D.J.) (overruling Commissioner's objection, holding error was not harmless based on discrepancy between psychologists' opinions about superficial interaction and the VE's testimony); *see also*, *generally*, *Buck v. Comm'r of Soc. Sec.*, No. 3:22-CV-01071, 2023 WL 3978288, at *3 (N.D. Ohio, June 13, 2023) (rejecting R&R that recommended reversing based on ALJ's failure to include "superficial" in RFC in opinions she found only "somewhat persuasive," because "reading the decision as a

---

[17]*Francis*, filed just two months before *Lindsey*, was written by the same magistrate judge.

whole as required, the ALJ adequately articulated her reasoning."); *Quintanilla*, 2017 WL 1433306, at \*4 (Noting that unskilled work deals primarily with objects, not data or people, and that DOT ratings for jobs were "not significant" for dealing with people. Reasoning that "to the extent the ALJ failed to limit Plaintiff to 'superficial work related interaction with coworkers and supervisors,' it was inconsequential to the outcome.").

On the record presented here, Plaintiff has proved no prejudice. The ALJ determined that Plaintiff could perform work as an inspector and in other positions for which the DOT rates the level of social interaction as a "People level 8," meaning the lowest defined level of social interaction. That level of interaction is described as "not significant." *See e.g.*, Inspector, DOT#559.687-074, 1991 WL 683797. The undersigned finds persuasive the reasoning of many other courts that occupations with a social interaction level of "8" can be performed even by individuals with a limitation to "superficial" interactions.[18] *See, e.g.*, *Simpson v. Colvin*, 2014 WL 5313724, at \*21 (E.D. Mo. Oct. 16, 2014); *Cissner v. Berryhill*, 2017 WL 3821461, at \*10 (S.D. Ohio Sept. 1, 2017).(finding no error where restriction to superficial interaction was "entirely consistent" with the jobs that the ALJ relied upon).

### III. Conclusion and Recommendation

Because the Commissioner's decision reflects no legal error and is supported by substantial evidence, **IT IS RECOMMENDED THAT** the decision be **AFFIRMED** and that this case be **CLOSED**.

---

[18]To counter this highly persuasive case law, Plaintiff argues that there is no "bright line rule … that all cases with a People rating of 8 be found consistent with superficial work," and that such a determination must be made "on a case-by-case basis." (Doc. 12 at 6). Apart from the lack of any case citation for this proposition, Plaintiff's argument does nothing to satisfy his burden to show that any error was not harmless in the case presented.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

STEPHEN D.,                                             Case No. 1:21-cv-00746

        Plaintiff,                                   Cole, J.
                                                        Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).