## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**STEPHEN D.,**

        **Plaintiff,**

    **v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

**Case No. 1:21-cv-746**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Bowman**

### OPINION AND ORDER

A narrow, but frequently-recurring, issue relating to the review of Social Security Administration (SSA) disability determinations is sowing confusion in the courts. The Administrative Law Judge (ALJ) here characterized a psychological consultant's opinion that claimant, Stephen D., was limited to "superficial interaction" as "vocationally vague." Then, after reviewing the various expert evidence relating to Stephen's mental residual functional capacity (RFC), the ALJ determined that Stephen was instead limited to "occasional interaction," a phrasing that he believed carries a more precise meaning under Social Security Regulations. Based in part on that RFC determination, the ALJ found Stephen was not disabled.

Stephen now claims it was error for the ALJ to disparage the phrase "superficial interaction" as vocationally vague and instead to use the phrasing "occasional interaction" in determining Stephen's mental RFC. To be fair, some courts in this District have generally agreed with that argument in cases involving similar facts. Others, though, disagree. Here, in a thoughtful Supplemental Report and

Recommendation (R&R) (Doc. 21), the Magistrate Judge carefully explored the competing caselaw. She ultimately concluded that the ALJ did not err in making this substitution and that, as a result, this Court should affirm the Commissioner's decision. Stephen objects to that recommendation. (Doc. 23). For the reasons discussed below, the Court **ADOPTS** the Supplemental R&R (Doc. 21) in full, **OVERRULES** Stephen's objections (Doc. 23), **DENIES** Stephen's Motion to Remand (Doc. 14), and **AFFIRMS** the Commissioner's decision. The Court accordingly **DISMISSES** the Complaint (Doc. 4) **WITH PREJUDICE**.

## BACKGROUND

Social Security is a complex and somewhat insular area of law. So to help put the specific dispute here in context, the Court will begin by describing the overall legal landscape of Social Security disability adjudications before turning to the facts of this case.

### A.    Social Security Adjudications Generally

To qualify for disability benefits, a claimant must prove he is disabled under the Social Security Act. That Act defines disabled to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." Social Security Act § 223(d)(1)(A), 42 U.S.C. § 423(d)(1)(A). In short, the question is whether the claimant can be expected to have a job. Through implementing regulations, the SSA has adopted a five-step evaluation

process to determine whether an individual meets this standard. *See* 20 C.F.R.
§ 416.920(a)(4). That five-step process proceeds as follows:

> Step One: The SSA determines if the claimant is currently engaging in
> substantial gainful activity. If so, the claimant is not disabled and the
> inquiry ends. If not, proceed to Step Two. *Id.* § 416.920(a)(4)(i).

> Step Two: The SSA determines as a threshold matter whether the
> claimant's medical impairments are severe (such that they significantly
> limit the claimant's physical or mental ability to do basic work
> activities). If they are not severe, the claimant is not disabled and the
> inquiry ends. If they are severe, proceed to Step Three. *Id.*
> § 416.920(a)(4)(ii); *see id.* § 416.922.

> Step Three: The SSA determines whether the claimant has any medical
> impairments that alone or in combination equals the severity of one of
> the listed impairments in Appendix 1 of Subpart P of Part 404 of Title
> 20 of the Code of Federal Regulations (Appendix 1). If so, the claimant
> is disabled and the inquiry ends. If not, proceed to Step Four. 20 C.F.R.
> § 416.920(a)(4)(iii).

> Step Four: The SSA determines the claimant's "residual functional
> capacity" (RFC), defined as "the most [the claimant] can still do despite
> [his] limitations." *Id.* § 416.945(a)(1). After determining the claimant's
> RFC, the SSA determines whether he can perform any work in which he
> has engaged in the past. If so, he is not disabled and the inquiry ends. If
> not, proceed to Step Five. *Id.* § 416.920(a)(4)(iv).

> Step Five: The SSA determines whether, according to the claimant's
> RFC, and considering other vocational factors such as age, education,
> and work experience, he can perform other jobs that exist in significant
> numbers in the national economy. If so, the claimant is not disabled. If
> not, the claimant is disabled. *Id.* § 416.920(a)(4)(v); *Id.* § 416.960(c).

Because the SSA adjudicates over a million disability claims per year,[1] much of the language ALJs[2] use when undertaking the five-step process described above is heavily standardized. When determining a claimant's RFC, an ALJ considers the claimant's physical and mental capabilities. *See* 20 C.F.R. § 404.1545(b)-(c). The physical functions considered include the claimant's ability to stand, to walk, to lift, to push, to pull, or to manipulate objects, as well as postural limitations. *Id.* § 404.1545(b). When determining a claimant's ability to perform other work in the national economy at Step Five, the ALJ compares the claimant's physical capabilities with a job's coded[3] exertion level. The five exertion levels are "Sedentary," "Light," "Medium," "Heavy," and "Very Heavy." *Id.* § 404.1567. Each term is defined by reference to the claimant's ability to perform certain standardized tasks. For example, "Sedentary" work involves lifting no more than 10 pounds at a time, while "Light" work involves lifting no more than 20 pounds at a time. *Id.* § 404.1567(a)–(b). Then, to measure the frequency of those tasks, the regulations use the terms "occasionally" and "frequent." *Id.* § 404.1567. So, for example, a physical RFC might reflect that the claimant can perform Light work occasionally. But those terms are

---

[1] *Annual Statistical Report on the Social Security Disability Insurance Program, 2020*, Social Security Administration (November 2021), https://perma.cc/3ZQX-7P2U.

[2] A disability claim is normally filed with and adjudicated by a State disability agency before the SSA adjudicates the claim. *See* Social Security Act § 221(a),42 U.S.C. § 421(a). Those State disability adjudicators must use the same standards and rules that ALJs use. *Id.*

[3] The Department of Labor maintains a comprehensive reference material which codes jobs in the economy by exertion level. *See Dictionary of Occupational Titles*, Information Technology Associates (last visited Feb. 29, 2024), https://perma.cc/GU3Y-UDHJ; *see also* DOT Crosswalk Search, O*NET OnLine (last updated Apr. 30, 2024), https://www.onetonline.org/crosswalk/DOT/.

not as indeterminate as their colloquial use may imply. The SSA has, by a Social Security Ruling (SSR), made a broadly applicable program policy statement defining the terms more precisely. SSR 83-10, 1983 WL 31251 (Jan. 1, 1983). "Occasionally," when used in a disability adjudication RFC (at least when applied to physical limitations, more on that below) means "occurring … up to one-third of the time."[4] *Id.* at \*5. "Frequent[ly]" means between one-thirds and two-thirds of the time. *Id.* at \*6.

When assessing a claimant's mental disabilities, on the other hand, an ALJ considers four broad functional categories: (1) "[u]nderstand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist or maintain pace"; and (4) "adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The SSA uses a five-point scale to rank the claimant's impairment in each of these areas: "None," "Mild," "Moderate," "Marked," and "Extreme." *Id.* § 404.1520a(c)(4) (cleaned up). Impairments receiving a "None" or "Mild" ranking generally do not qualify as severe (and therefore do not contribute to a finding that one is disabled). *Id.* § 1520a(d)(1). But if a claimant has two "Marked" areas or one "Extreme" area of impairment, that leads to a disability finding at Step 3 (i.e., the two "Marked" impairments in combination, or the one "Extreme" impairment, are deemed equal in severity to an impairment listed in Subpart P). *Id.* pt. 404, sbpt. P, App'x 1, Listing 12.00(F)(2). Impairments falling below that level, though, are still considered at Step Four as factors in determining the claimant's mental RFC. *See id.* § 404.1545(a)(2), (e).

---

[4] "Time" generally refers to the length of the standardized 8-hour workday. *See* SSR 83-10.

To determine a claimant's physical and mental abilities, an ALJ must consider all the medical opinions presented and describe the persuasiveness of each. *Id.* §§ 416.920c(a), 416.927(c); *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996). Moreover, the ALJ must "include a narrative discussion describing how the evidence supports" the RFC. SSR 96-8p, 1996 WL 374184, at *7. And if the RFC assessment conflicts with a medical opinion in the record, "the adjudicator must explain why the opinion was not adopted." *Id.* To satisfy this requirement, that explanation must say enough "to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (citation omitted).

## B.    Stephen's Adjudication

On March 7, 2018, Stephen filed for disability insurance benefits claiming he was disabled because of a prior stroke, two prior heart attacks, left-side weakness, high blood pressure, high cholesterol, a brain lesion, a herniated disc, and a "[b]lown disc." (Doc. 6-2, #64; Doc. 6-3, #118). The State disability examiner denied his claim at the initial level on September 10, 2018, (Doc. 6-3, #132), and at the reconsideration level on February 19, 2019, (*id.* at #150–51). At the initial level, the State examiner considered evidence from three primary medical sources: (1) Stephen's medical records from his healthcare providers, (*Id.* at #118–21); (2) the examining report of clinical psychologist James Rosenthal, Psy.D., (*id.* at #119); and (3) the opinions of State consulting physicians (including two psychological disability consultants, as described below), (*id.* at #125–32). Because Stephen's arguments before this Court

center on the ALJ's alleged error in determining his mental capabilities, the Court will focus on the medical evidence relevant to that determination.

Dr. Rosenthal was the only psychologist who examined Stephen personally. He reported that Stephen arrived on time for his appointment, drove himself to the office, and presented with neat grooming. (Doc. 6-8, #898). He also reported that Stephen's energy was "low average" and that he appeared sad. (*Id.*). When asked about his daily living, Stephen reported that he resided with his mother and daughter, paid bills in cash, drove short distances from his home one or two times a month, received visits from his girlfriend, and talked daily with his mother and daughter. (*Id.* at #899). Dr. Rosenthal diagnosed Stephen with major depression and adjustment disorder with anxiety. (*Id.* at #900). Reporting on Stephen's ability to "respond[] appropriately to supervision and to co-workers in a work setting," Dr. Rosenthal concluded that "the claimant reported pattern [sic] of conflict with others in work or social settings. He said he related well with most bosses and co-workers on past jobs." (*Id.*).[5]

Psychological consultant Aracelis Rivera, Psy.D., who provided an opinion in connection with the pre-ALJ state-agency review, did not meet Stephen, but rather

---

[5] Magistrate Judge Bowman in her Supplemental R&R contends that Dr. Rosenthal's report contains a crucial typo. Instead of saying "the claimant reported pattern of conflict with others," Dr. Rosenthal's report should have read "the claimant reported <u>no</u> pattern of conflict with others." (Doc. 21, #1220). The Court agrees. The paragraph in the report is confusing and contradictory as written and the sentence at issue is missing either the article "a" (as in "a pattern") or the negative "no" (as in "no pattern"). And the following sentence is far more consistent with the latter than the former. Properly understood, then, Dr. Rosenthal's report reflects that Stephen had no pattern of conflict with colleagues and related well with them. Ultimately this clarification makes little difference to the Court's review because it does not appear that the ALJ explicitly relied on Dr. Rosenthal's assessment of Stephen's past workplace interactions. (*See* Doc. 6-2, #73, 75).

relied exclusively on Dr. Rosenthal's report to form his opinion. (Doc. 6-3, #128–29). He found that Stephen was "[n]ot significantly limited" in most areas of mental capacity and only "moderately limited" in others. (*Id.* at #129–31). When describing why he believed Stephen was "moderately limited" in his ability to interact with co-workers he wrote, that Stephen "[c]an interact superficially." (*Id.* at #131).

At the agency reconsideration level, another psychological consultant, Juliette Savitscus, Ph.D, provided an opinion. She also did not meet Stephen and relied on Dr. Rosenthal's report to form her conclusions. (*Id.* at #143–44). And like Rivera, she concluded that Stephen was "moderately limited" in his ability to interact with co-workers, which she substantiated by stating that he "[c]an interact superficially" with others. (*Id.* at #148).

After the state agency determined Stephen was not disabled for SSA purposes, he requested a hearing before an ALJ. (Doc. 6-4, #172). Proceeding through the five-step framework, the ALJ determined at the first three steps: (1) that Stephen was not engaging in substantial gainful activity, and (2) that he had a variety of severe medical impairments, both physical and mental, but (3) that considered alone or in combination the impairments were not equal in severity to those listed in Appendix 1 of Subpart P. (Doc. 6-2, #66–69).

That meant that he needed to determine Stephen's RFC. Based on the relevant medical evidence for Stephen's physical impairments (not challenged here), the ALJ found that Stephen's physical RFC would allow him to perform Light work with some

additional limitations. (*Id.* at #69–70). In terms of his mental RFC, which is the more important issue here, the ALJ found that Stephen could

> understand, carry out, and remember simple instructions in work that can be learned in 1 month or less; make simply work-related decisions; occasionally interact with supervisors, co-workers, and the public; occasionally tolerate changes in a routine work setting; and perform work in which the pace is not set by an external source over which he has no control such as assembly line work.

(*Id.* at #70).

In making these various assessments, the ALJ stated he had "fully considered" all of the medical opinions, but noted that he declined to "defer or [to] give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s)." (Doc. 6-2, #75). In terms of the psychological opinions in particular, the ALJ found each of the psychological consultant's opinions "persuasive in part." (*Id.* at #75 (Rosenthal), #76 (Rivera and Savitscus)). Explaining more fully, the ALJ described Rivera's and Savitscus's statements that Stephen could handle "low stress" and "interact[] superficially" as "vocationally vague." (*Id.* at #76). Deciding to use somewhat different phrasing, the ALJ found that "a preponderance of the evidence including the consultative psychological examination report[s] supports occasional interaction with others." (*Id.*).

Using his assessment of Stephen's RFC, the ALJ then inquired of a vocational expert as to the kind of jobs that Stephen could perform. Given Stephen's ability to perform Light work, and his accompanying mental limitations, the vocational expert concluded that Stephen could perform jobs such as "inspector, DOT 559.687-074, SVP

2, light exertion, with 180,000 jobs in existence in the national economy."[6] (*Id.* at #78). Based on that testimony, the ALJ ultimately determined that Stephen was not disabled. (*Id.* at #79). The Appeals Council, the body within the SSA that hears appeals of disability adjudications, then denied Stephen's request for review, which means the ALJ's determination became the final and binding decision of the Commissioner. (Doc. 6-2, #20); 20 C.F.R. § 404.981; Social Security Act § 205(g), 42 U.S.C. § 405(g).

Stephen then brought suit in this Court, in which he filed a statement of specific errors asking the Court to overturn the ALJ's adverse determination. (Doc. 7). He contends that the ALJ erred in determining his RFC because the ALJ concluded that Stephen could "occasionally" interact with supervisors, without mentioning any limitation to "superficial interaction"—the term that two of the psychological consultants had used. (*Id.* at #1125–26). He argues that "superficial interaction" is necessarily distinct from "occasional interaction," as it connotes the *quality* of the interaction, rather than quantity or frequency. (*Id.* at #1127–28). The Commissioner responded (Doc. 9) and Stephen replied (Doc. 12). A few months later, Stephen moved to remand citing an Appeals Council decision in an unrelated case that vacated an ALJ's determination based partly on the ALJ's disregarding "superficial interaction" as a vocationally vague term. (Doc. 14, #1165–66).

---

[6] As alluded to above (*see* supra n. 3), DOT refers to Directory of Occupational Titles, a compendium of various jobs that provides a brief description of, and a standardized assessment of the exertional force, education and preparation, and other skills necessary to perform, each job. The entry to which the ALJ referred is for an "Inspector and Hand Packager," whose job is to conduct a visual examination of various products for defects.

Magistrate Judge Bowman initially issued a report and recommendation (R&R) suggesting that this Court affirm the Commissioner's disability determination. (Doc. 17). But the Magistrate Judge did not specifically discuss the split within this district over the impact of the ALJ's referring to the "superficial interaction" limitation as vocationally vague, and instead applying the phrase "occasional interaction." (Doc. 19, #1208–09 (citing several cases on both sides of the issue)). So the Court returned the matter to the Magistrate Judge requesting that she issue a supplemental R&R discussing (1) whether the ALJ committed reversible error by discounting the phrase "superficial interaction" as vocationally vague, (2) whether the ALJ also rejected the "superficial interaction" limitation on evidentiary grounds, and (3) whether any error the ALJ may have committed was harmless. (*Id.* at #1209).

In response, Magistrate Judge Bowman issued a thorough Supplemental R&R, describing the split in the case law over the superficial/occasional interaction issue. (Doc. 21, #1221–29). After laying out the competing views, she concluded that the ALJ should not be reversed because of his failure to incorporate a psychological consultant's use of the adjective "superficial" in the claimant's RFC determination here. She also provided four basic reasons in support of that conclusion: (1) such a reversal would "invade[] the ALJ's singular authority to formulate the RFC," (*id.* at #1229); (2) when applied to a work-place setting, "occasional interactions" and "superficial interactions" are functionally equivalent, (*id.* at #1229–30); (3) the term "superficial" is vague and has not been defined by SSA regulation or policy guidance, (*id.* at #1230–31); and (4) ample persuasive authority holds that an ALJ does not err

11

when failing to incorporate the "superficial" adjective in the RFC, (*id.* at #1231–37). Addressing the other issues the Court raised in its order, Magistrate Judge Bowman concluded that sufficient additional evidence supported the ALJ's RFC finding, (*id.* at #1238–45), and that any possible error the ALJ committed in treating the consultant's opinion of "superficial interaction" limitation instead as an "occasional interaction" limitation was therefore harmless, (*id.* at #1245–48).

Stephen objected on five grounds: (1) the Magistrate Judge should have considered the expertise of the State psychological consultants when determining the ALJ did not err in dismissing their use of the "superficial" adjective, (2) "superficial interaction" is not vocationally vague, (3) requiring the ALJ to explain why a medical opinion is vague does not hinder the ALJ's authority, (4) the ALJ did not reject the "superficial interaction" limitation on other evidentiary grounds, and (5) the ALJ's error was not harmless. (Doc. 23, #1255–71). The Commissioner responded to those objections by relying largely on the thorough analysis of the Supplemental R&R. (Doc. 24). The matter is ripe for review.

## LEGAL STANDARD

This case involves two layers of review. The first layer is the Court's review of the Magistrate Judge's R&R and Supplemental R&R, which, in cases where a party timely objects (as here), is de novo, at least for those issues as to which the party has objected. *Williams v. Parikh*, 2023 WL 8824845, at *2–*3 (S.D. Ohio Dec. 21, 2023). The second layer is the Court's review of the ALJ's disability determination. For factual determinations, the review is deferential. Under the Social Security Act, "[t]he

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Social Security Act § 205(g), 42 U.S.C. § 405(g). Substantial evidence requires "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). As to the law, the Court reviews the ALJ's decision to ensure he employed "proper legal standards," and the Court does not defer for purely legal conclusions. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citation omitted); *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003). When an ALJ fails to follow SSA regulations and that failure prejudices the claimant, the Court must reverse that decision—even if otherwise supported by substantial evidence. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## LAW AND ANALYSIS

Although Stephen raised five objections, they all turn on one contention—that the ALJ erred by relying on an "occasional interaction" limitation, and not mentioning a "superficial interaction" limitation, when determining the RFC. The Magistrate Judge's Supplemental R&R exhaustively considered and presented the case law and arguments going each way on that issue. And ultimately, given the competing case law, it is likely an issue that the Sixth Circuit ultimately will need to decide. So the Court will not re-plow all the ground that the Magistrate Judge covered. At bottom, though, the Court concludes that, given the deference due to the ALJ in formulating the RFC: (1) the ALJ's use of "occasional interaction" did not "conflict with" the

medical opinion suggesting "superficial interaction," and thus no specific explanation for any "inconsistency" was required, (2) that to the extent that an explanation was necessary, the ALJ here provided sufficient explanation, and thus did not err in adopting the occasional interaction limitation, and (3) even if the ALJ did err in using the phrase "occasional interaction" rather than "superficial interaction" in determining Stephen's mental RFC, any such error was harmless, as Plaintiff has failed to identify any jobs that the ALJ found that Stephen would be qualified to perform using the phrase "occasional interaction" that Stephen could not perform if the ALJ had instead used "superficial interaction" in describing Stephen's mental RFC.

## A. Stephen Has Not Shown That "Superficial Interaction" is Inconsistent with "Occasional Interaction."

"Superficial" and "occasional" are of course two different words, and they have at least somewhat different meanings. "Superficial," in the most relevant context here, means "concerned only with the obvious or apparent: shallow." *Superficial*, Merriam-Webster's Online Dictionary, https://perma.cc/5KR8-NXQD. "Occasional," by contrast, means "occurring, appearing, or taken at irregular or infrequent intervals." *Occasional*, Merriam-Webster's Online Dictionary, https://perma.cc/BRY8-RH8W. And when modifying "interactions"—i.e., an individual's social interactions—one could understand that the colloquial use of those adjectives are different. We all intuitively know that when someone says, "I know her superficially," he of course means that he does not know her *well*; while saying "I see her occasionally," communicates that he sees her on an infrequent basis. As the

opinions ascribing a significant difference to the two note, the former relates to the *quality* of the interaction, while the latter relates to the *quantity or frequency* of it.

Social Security regulations bear out, at least to a certain extent, that "occasionally" refers to quantity. Under SSR 83-10, as a general rule, using "occasionally" in connection with a claimant's limitation means up to one-third of the time he is performing work-related duties interacting with co-workers. *See* 1983 WL 31251, at *5. And under that view, of course, "occasionally" would appear to be a measure of quantity, not quality.

But the Court nonetheless concludes that "occasionally" does not create a sufficient conflict with "superficially" when applied to "interactions," such that the ALJ would be required to explain that change. As Magistrate Judge Bowman aptly put it in her Supplemental R&R, "[an] emphasis on the 'qualitative' nature of the vocationally-undefined adjective 'superficial' as if in conflict with the defined 'quantity' of interaction … ignores the reality that time-limited 'occasional' interactions in an unskilled work setting are reasonably understood to require only surface-level interactions." (Doc. 21, #1229). The Court agrees. Assuming that "occasionally" means limiting a claimant to jobs where he spends no more than one-third of his time performing work-related activities interacting with others likely also means he lacks time to interact socially on a non-superficial level.

Beyond that, the Court is not convinced that, as applied to mental RFC limitations, the word "occasionally" carries the same strict "up to one-third of the workday" meaning that it does when used in connection with physical limitations.

*See Reynolds v. Kijakazi*, 25 F.4th 470, 474 (7th Cir. 2022) (rejecting argument that occasional interaction means up to one-third of workday, and noting "the DOT definition [of occasional] does not refer to interactions with others; instead, it refers to the frequency with which an employee would have to exert various amounts of physical force"). For example, in the same sentence that the ALJ found the "occasional interaction" limitation, the ALJ also found that Stephen could handle "occasional changes in work setting." (Doc. 6-2, #75–76). The Court struggles to believe that this means "changes in work setting occurring up to one-third of the workday." Rather, the usage in this context seems more akin to the colloquial usage of the term occasional, as meaning 'from time to time,' as *Reynolds* suggests. *See* 25 F.4th at 474–75.

Either way, the Court agrees that the modifier "occasionally," whether it specifically means one-third of the workday or generally means from time to time when applied to "interactions," refers to the duration or frequency of the interactions, and not directly to their quality. But when a person is limited to engaging in only short and infrequent interactions, that strongly correlates, as a practical matter, with interactions that are superficial, as well. Given the correlation between the two, the ALJ's decision to use "occasional" instead of "superficial" as applied to "interactions" in calculating the mental RFC suggests that no real conflict exists. And, in turn, that means there is no "inconsistency" that the ALJ must explain.

Though certainly not spelled out in detail, Sixth Circuit precedent likewise at least suggests that "superficial" and "occasional" are consistent descriptions of a

claimant's abilities for purposes of determining a disability RFC. In *Reeves v. Commissioner of Social Security*, two psychological consultants stated that the claimant was "moderately limited" in his ability to interact with the public and was "able to relate to a few familiar others on a superficial basis." 618 F. App'x 267, 275 (6th Cir. 2015). But when determining the claimant's RFC, the ALJ stated the claimant could handle "only occasional interaction with the public," omitting any explanation on how the claimant could interact with known co-workers or supervisors. *Id.* The claimant argued that the ALJ erred by failing to discuss his ability to interact with co-workers or supervisors. *Id.* But the Sixth Circuit held that the ALJ's opinion was consistent with the consultant's opinions, stating that the ALJ "accounted" for their relate-on-a-"superficial[-]basis" opinions by limiting the claimant to "occasional interaction with the public." *Id.* The court then stated that "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a[n] opinion[] verbatim; nor is the ALJ required to adopt the state agency psychologists' limitation wholesale." *Id.* Put differently, the court concluded that the RFC determination (which found the claimant could engage in "occasional interaction with the public") was supported by substantial evidence and was "not inconsistent with either of the state agency psychologists' opinions" (which had found that the claimant was moderately limited as to public interactions and could interact with "a few familiar others on a superficial basis"). *Id.*

True, it would be an overstatement to say that *Reeves* "held" that the two were consistent. But *Reeves* is nonetheless informative on the issue in two respects. First,

it supports a capacious view of when an ALJ's RFC is consistent with a medical opinion. The difference between public-facing interaction and interactions with "a few familiar others" is far greater than whatever daylight exists between "superficial" and "occasional" interaction. And yet *Reeves* held that an RFC that addressed only public-facing interactions did not conflict with a medical opinion that had addressed both public-facing and co-worker interaction. This at least suggests that an ALJ need not distinguish a medical opinion unless his assessment of the claimant's abilities is *factually inconsistent* with the medical opinion, rather than incomplete or semantically different. Second, *Reeves* provides the only guidance from the Sixth Circuit on whether "occasional" and "superficial" are meaningfully distinct descriptions for an RFC. While the central argument on appeal in *Reeves* was whether an RFC describing the claimant's ability to interact with the public accounted for psychological consultants' opinions about his abilities to interact with co-workers, the court's language is relevant here as well. As noted, the consultant's opinion in *Reeves* stated that the claimant was "moderately limited" on public interactions and could "relate to a few familiar others on a superficial basis." *Id.* The ALJ, meanwhile, stated he could "occasional[ly] interact[] with the public." *Id.* And the Sixth Circuit held that the latter "accounted" for the former. *Id.*

Caselaw from other circuits also supports the notion that "superficial interaction" is not meaningfully inconsistent with "occasional interaction." In *Reynolds*, for example, the Seventh Circuit at least suggests that "the distinction … between 'occasional' and 'superficial' [when applied to 'interactions'] may not matter

for purposes of the RFC analysis." 25 F.4th at 475. And even more recently, when faced with the argument that "occasional interaction" and "superficial interaction" were meaningfully different, the Eighth Circuit, although admittedly in an unreported decision, "reject[ed] this manufactured inconsistency," and "decline[d] to nitpick [the ALJ's] well-reasoned decision." *Lane v. O'Malley*, Case No. 23-1432, 2024 WL 302395, at *1 (8th Cir. Jan. 26, 2024). Likewise, as the Magistrate Judge noted, (Doc. 21, #1236), the Ninth Circuit in *Shaibi v. Berryhill*, found "no obvious inconsistency," where medical experts had testified the claimant could "relate to others on a superficial work basis," and the ALJ treated that as an "occasional interaction" limitation. 833 F.3d 1102, 1107 (9th Cir. 2017).

Relatedly, even if it *could be* the case that "superficial interactions" and "occasional interactions" are meaningfully different such that the ALJ must explain a change from the former (in a medical opinion) to the latter (in stating the mental RFC), Stephen has not shown that it *is* the case here. In other words, the Court acknowledges that particular terms sometimes take on special meanings in various specific contexts. So, the Court concedes that, notwithstanding its conclusion that, as a general semantic matter, the gradations between "superficial interactions" and "occasional interactions" do not appear significant, it may be that in the vocational setting (i.e., what jobs can this claimant perform?) they are.

But if that is what Stephen is arguing, it was incumbent upon him to build a record proving it. For example, at the hearing, his attorney could have asked the vocational expert: "If the mental limitation in the RFC were 'superficial interaction'

rather than 'occasional interaction,' would that change your opinion about the jobs that Stephen could perform?" The attorney asked just such a question about the proposed additional limitations of "occasional handling and fingering bilaterally" and "tolerance for off task behavior." (*See* 6-2, #113). But he never inquired about the impact of changing the interaction limitation from "occasional" to "superficial." So there is no evidence in the record suggesting that vocational experts understand those two terms to be different from one another, such that the ALJ would be required to explain a change from one to the other.

Indeed, Stephen has not even really shown that *psychological* experts conclude that "superficial interactions" and "occasional interactions" conflict. True, he notes that such experts *use* the term "superficial interactions" in describing mental limitations. (*See* Doc. 23, #1256–59). But he has tendered no evidence (such as an affidavit) showing that psychological experts understand that term to mean something different from "occasional interactions," or that they would object to swapping the latter description for the former in describing the vocational impact of a limitation on interactions.

In light of all of the above, the Court concludes that, while the ALJ admittedly did not adopt the opinion verbatim, Stephen has failed to show that the two descriptions conflict. *See Reeves*, 618 F. App'x at 275 (noting there is no requirement to adopt a report verbatim). And because they do not conflict, the ALJ did not need to offer any particular explanation for using the description "occasional," rather than "superficial" in connection with Stephen's limitations on interacting. Accordingly,

Stephen has failed to show that the ALJ erred in making that substitution, or in determining Stephen's mental RFC based on it.

Stephen's argument to the contrary is unconvincing. He contends that "[t]he majority of the District Court cases [in this district] hold that there is a distinct difference between 'superficial' and 'occasional' interaction." (Doc. 23, #1259). However, all the cases Stephen cites are nonbinding district court cases, *The W. & S. Life Ins. Co. Benefits Comm. v. Jenkins*, No. 1:23-cv-609, 2024 WL 2132416, at *3 n.2 (S.D. Ohio May 13, 2024) ("The Court takes occasion to reject (again) the commonly-asserted-but-nonetheless-mistaken assumption Defendants make in their briefing: there is no 'law of the district court.'"), and, as Magistrate Judge Bowman pointed out, are also unpublished. (*See id.* at #1259–61). *See Hutton v. Comm'r of Soc. Sec.*, No. 2:20-cv-339, 2020 WL 3866855, at *4 (S.D. Ohio July 9, 2020) (collecting cases distinguishing "superficial" and "occasional" interaction based on the conception that "superficial" connotes quality while "occasional" connotes quantity), *report and recommendation adopted*, 2020 WL 4334920 (S.D. Ohio July 28, 2020); *Crisp v. Comm'r of Soc. Sec.*, No. 2:19-cv-2401, 2020 WL 581841, at *3 (S.D. Ohio Feb. 6, 2020) (same), *report and recommendation adopted*, 2020 WL 5640056 (S.D. Ohio Sept. 22, 2020); *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-cv-3820, 2021 WL 3087639, at *4 (S.D. Ohio July 22, 2021) (same), *report and recommendation adopted*, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021). For the reasons above, the Court declines to adopt them here.

In sum, Stephen has not shown any conflict between the ALJ's determination that Stephen was limited to "occasional interaction" and any medical opinion in the record. Thus, the ALJ was not required to offer any particular explanation.

## B. The ALJ Did Not Violate Social Security Regulations When He Stated the Consultants' Opinions were Vocationally Vague.

Even assuming that the ALJ's determination did conflict with the psychological consultants' opinions, Stephen has likewise failed to show that the ALJ did not sufficiently explain his decision not to use the term "superficial interactions." Recall, the Code of Federal Regulations (CFR) assigns the Social Security ALJ the primary obligation to assess a disability claimant's RFC. 20 C.F.R. § 404.1546(c). Moreover, those same regulations make it clear that the ALJ need not defer to any "prior administrative medical finding(s)" when making that determination. *Id.* § 404.1520c(a). The upshot of those rules is that the ALJ is imbued with discretion when formulating the RFC and need not use the exact language of various medical opinions in the record when describing a claimant's abilities. *Reeves*, 618 F. App'x at 275; *Snyder v. Comm'r of Soc. Sec.*, 22-277-cv, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) ("The ALJ acted within her discretion in weighing the evidence, and the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." (cleaned up)).

True, when determining a claimant's RFC, the ALJ must consider all the medical opinions presented, must "include a narrative discussion describing how the evidence supports" the RFC, and, where the RFC conflicts with a medical opinion, must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184, at *7;

20 C.F.R. § 416.920c(a)–(b). But in deciding whether the ALJ has adequately "explained" the decision not to adopt particular phrasing from a medical opinion, this Court's review is largely constrained to whether that explanation is rational such that the Court can "trace the path of [its] reasoning." *Stacey*, 451 F. App'x at 519 (citation omitted). So long as the ALJ's explanation shows that he has evaluated the various medical opinions in conformance with the standardized criteria found in the regulations, *see* 20 C.F.R. § 404.1520c(c) (requiring ALJ to consider a medical opinion's methodological supportability based on underlying data, the opinion's consistency with other medical findings, and the specialization of the physician), any further court review for substance is very constrained. Stated alternatively, if the ALJ has undertaken a procedurally proper review of the medical records in formulating the RFC and the challenge is to the substance of the ALJ's formulation after that procedurally proper review, the bar for any such challenge is high, and it is the claimant's burden to meet it. *See* 20 C.F.R. § 416.920(a)(4) (claimant's RFC determined at Step Four); *Baker v. Barnhart*, 182 F. App'x 497, 499 (6th Cir. 2006) ("The claimant has the burden of proof in steps one through four.").

Here, the ALJ performed a procedurally proper review. He considered the information that all three psychologists (the treating psychologist and the two reviewing agency psychologists) and determined that they were all persuasive in part. (Doc. 6-2, #75–76). In connection with that, the ALJ summarized the information that they provided about Stephen (as well as the information that Stephen himself provided), including about his ability to interact with others. The

ALJ noted, for example, that while Stephen "ha[d] difficulty engaging in social activities and spending time in crowds due to anxiety and panic attacks," he was "also able to get along with others including authority figures, … lived with and talked to his mother/daughter daily, shopped with the assistance of friends, and ran errands occasionally." (*Id.* at #68). Based on such information, along with his concerns that "superficial interaction" was "vocationally vague," the ALJ determined that it would be more appropriate to use the phrase "occasional interaction" in describing Stephen's limitation. There is certainly enough there for the Court to trace the ALJ's reasoning. (*Id.* at #76).

Stephen does not really disagree that the ALJ followed the correct *procedures*. Rather, his core argument for reversing the ALJ's determination, and the argument adopted by the unpublished district court cases cited above, is that the ALJ erred because his explanation was substantively inadequate—in particular, in declining to adopt the phrase "superficial interaction" on the grounds that it is "vocationally vague." (Doc. 23, #1259–65). But, as noted above, to mount that attack, Stephen must clear a high bar. Because the ALJ's description of a claimant's RFC is a finding of fact, *see Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009) ("We find the ALJ's RFC determination is supported by substantial evidence."), and because such findings are "conclusive" unless unsupported by substantial evidence, Social Security Act § 205(g), 42 U.S.C. § 405(g), Stephen must show that the ALJ's explanation is *wrong* (such that it could not be supported by substantial evidence)

rather than simply *different* from the medical opinion. Stephen has not made that showing on the record here.

To show that the ALJ committed error in referring to "superficial interactions" as "vocationally vague," Stephen principally points to the fact that state agency psychological consultants are experts in disability adjudications, and from that he argues that their use of the term "superficial" when describing a claimant's RFC necessarily means that it must have some vocationally specific meaning. (*See* Doc. 23, #1256–58). But the ALJ did not describe "superficial interactions" as *psychologically* vague. Rather, he said it is *vocationally* vague. Whether that is a meritorious objection to the term "superficial interactions," then, is not so much a question for psychological experts, as it is a question for *vocational* experts. So, to show that the ALJ was wrong in describing "superficial interactions" as vocationally vague, it was incumbent upon him to secure testimony or evidence from vocational experts showing that to be the case. The ultimate question, after all, is whether the claimant can perform various jobs, given his limitations. So if vocational experts were to say: "Yes, 'superficial interaction' means something to me, and something different from 'occasional interaction,'" *that answer* may show that the ALJ erred in describing the term "superficial interaction" as "vocationally vague." But Stephen had every opportunity to ask the vocational expert here whether that was the case, and he declined to do so. Indeed, Stephen has not even really shown that *psychological* experts would disagree that the term "superficial interactions" is "vocationally vague." True, as noted above, he points to such experts' *use* of the term. But he has

tendered no evidence showing that psychological experts understand that phrasing to have any particular *vocational* significance.

In short, it was Stephen's burden to show that the reason the ALJ gave for declining to use the phrasing "superficial interactions" (i.e., that the term is "vocationally vague") was an error. Stephen failed to meet that burden.

## C.    Any Possible Error Was Harmless

Finally, even if the ALJ had erred in making that swap in terminology, the Court further agrees with the Magistrate Judge that any such error is subject to harmless error review and, further, that any error in describing the limitation here as "occasional interactions," rather than "superficial interactions," was harmless.

As to the former question—whether harmless error analysis applies—the claimant concedes that is the case. (*Id.* at #1269–70 (citing cases)). In light of that, the Court declines to examine that question further.

So how does harmless error analysis play out here? As just noted, the only purpose an RFC serves is as an input for determining whether a claimant is capable of performing jobs that exist in a sufficient number in the national economy, such that that claimant should obtain a job, rather than receiving disability benefits. Here, based on the RFC determination and the vocational expert's testimony, the ALJ found that the claimant could perform jobs such as "inspector, DOT 559.687-074, SVP 2, light exertion, with 180,000 jobs in existence in the national economy." (Doc. 6-2, #78). The DOT entry to which the ALJ referred is for an "Inspector and Hand Packager," whose job entails visually examining various products for defects. *Inspector and Hand*

26

*Packager*, Dictionary of Occupational Titles (last visited May 2, 2024), https://perma.cc/JN72-MTC4. Nowhere in the record is there any suggestion that the level of interaction required by that type of job is such that the job could be performed by someone who can handle "occasional interactions," but could not be performed by someone who can only handle "superficial interactions" (to the extent that there is, as claimant argues, a difference between the two). Again, Stephen's counsel had every opportunity to ask that question to the vocational expert here. But, while he asked about *other* hypothetical limitations, he never asked whether changing from "occasional interactions" to "superficial interactions" would change the vocational expert's testimony in any way. (Doc. 6-2, #113). Accordingly, even if the ALJ erred in substituting the former for the latter, the claimant has failed to show that the error resulted in any harm to him.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Bowman's Supplemental R&R (Doc. 21) in full and **OVERRULES** Stephen's objections, (Doc. 23). The Court **DENIES** Stephen's Motion to Remand (Doc. 14). The final decision of the Commissioner is **AFFIRMED**, and the Court **DISMISSES** the Complaint (Doc. 4) **WITH PREJUDICE**. Accordingly, the Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this matter on its docket.

**SO ORDERED.**

May 16, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

27